TERRI F. LOVE, Judge.
I,Carl Keller was injured when the body of a suicide victim fell on him outside of the Hotel Monteleone in New Orleans. The trial court found that the defendants were not liable to Carl Keller or his wife. We find that the trial court did not err and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 2, 1996, Carl Keller was working as a cable technician for Cox Communications Louisiana, LLC (“Cox”) and was dispatched to the Hotel Montel-eone (“Hotel”). While he was placing a call to dispatch, he was struck by the falling body of Amy Lewis, who committed suicide by jumping from the roof of the Hotel. As a result, Mr. Keller sustained a broken leg, broken rib, and some scarring.
Mr. Keller and his wife, Toni Keller, filed a petition for damages against the Hotel and William A. Monteleone, as the President and Managing Director of the Hotel. The trial court granted an exception of insufficiency of service of process and dismissed the claims against Mr. Mon-teleone without prejudice. Mr. and Mrs. Keller then filed a supplemental and amended petition to add Ronald Pincus, the General Manager of the Hotel, as a defendant. Cox and Charity Hospital and | ¡.Medical Center of Louisiana at New Orleans (“Charity”) filed petitions of intervention regarding the payment of workers’ compensation benefits and medical bills, respectively.
The Hotel filed a motion for summary judgment, which the trial court denied. The parties agreed to a bifurcated trial. During the bench trial to determine liability, the Hotel moved for an involuntary dismissal, which was denied. The trial court judge concluded that the defendants were not liable to Mr. and Mrs. Keller. Mr. and Mrs. Keller’s devolutive appeal followed.

STANDARD OF REVIEW

Appellate courts review findings of fact made by the trial court judge using the manifestly erroneous or clearly wrong standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). “[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id. “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id.
Reversing a trial court’s findings of fact requires the appellate court to find that the findings are not supported by a reasonable factual basis and that the record demonstrates that the findings are clearly wrong. Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Ultimately, the appellate *1043 court must determine whether the “factfin-der’s conclusion was a reasonable one.” Id.

LIABILITY

Mr. and Mrs. Keller assert that the trial court erred by concluding that the height of the guardrail was measured from the walking surface according to the |sstandard building codes in 1997, finding that they failed to prove that the defendants knew or should have known of the alleged defect in its premises, and finding that there was no evidence that Mrs. Lewis “fell or jumped” where the pickets were missing.
George Hero, IV, the defense expert in architecture science, testified that a guardrail should be 43 inches high from the “walking surface.” Mr. Hero stated that the height of the Hotel’s guardrail exceeded every applicable code. Even if the “arch tops pickets” were removed, he concluded that the guardrail would remain 56 inches high. Finally, Mr. Hero testified that the Hotel’s guardrail was “way over the top of what is necessary and required by the code.” Mr. and Mrs. Keller did not present opposing expert testimony to represent that the height of the parapet should be subtracted from the total height of the guardrail. Additionally, Mr. and Mrs. Keller failed to present sufficient evidence that the missing pickets contributed to Mr. Keller’s injuries.
Victoria Wells, the only known eyewitness to Ms. Lewis’ suicide, testified via deposition that she noticed Ms. Lewis because of her long black dress and because Ms. Lewis was drinking from a wine bottle. Ms. Wells looked away for a moment and then saw Ms. Lewis falling on the other side of the Hotel.
The trial court’s reasons for judgment outlined the legal and factual posture of the case and stated:
Under Louisiana Civil Code art. 2317.1, a duty exists on the behalf of the owner of a building to keep its property free of vices or defects. In particular it states:
“The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the |4damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.” La. Civ.Code art. 2317.1.
To establish negligence under 2317.1, the plaintiff must prove the following: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise reasonable care. See Ambrose v. McLaney, 959 So.2d 529 (La.App. 4 Cir.2007). The requirement of actual or constructive knowledge imposes upon the owner or custodian a duty to exercise reasonable care in discovering ruin, vice or defect. Brown v. Williams, 36,863 (La.App. 2 Cir. 7/31/03), 850 So.2d 1116. This is a duty to recognize that the thing creates an unreasonable risk of harm to another when applying the degree of attention, perception of the circumstances, memory, intelligence, and judgment exercised by a reasonable person. Id.

(A) Actual or Constructive Knowledge of the Defect

Plaintiffs and Cox, in both their pre and post-trial memorandum, urge that *1044 the defendants had previous knowledge of a hazardous condition to its hotel guests and pedestrians outside of the hotel as its rooftop area had no fence to prevent guests who chose to jump from the roof from doing so. More specifically, plaintiffs and Cox claim that defendants freely acknowledged that one of its guests had jumped from the roof on a previous occasion prior to the incident involving Amy Lewis. Though defendants acknowledge these facts in their pre-trial memorandum, in their post-trial memorandum, defendants assert that there was no evidence presented by plaintiffs regarding this prior incident. In fact, defendants contend that plaintiffs’ only fact witnesses were Mr. Keller and Ms. Wells, neither of whom testified regarding this prior incident. A review of the record would confirm defendants’ contention. In short, there was no testimony regarding the existence, timing, facts or circumstances surrounding any prior similar incident.
Absent proof of this prior incident, the question for this Court is whether there are any facts in the record which create sufficient warning to defendants such that they had a duty to protect Mr. Keller from an incident such as the one he encountered. The Court finds that there is not.
IfiThe law is clear that plaintiffs have the burden of coming forth with evidence, by way of sworn testimony or exhibits direct or circumstantial, which support those facts which plaintiffs contend. Further, such facts must be proven by a preponderance of the evidence. Broussard v. Leger, 624 So.2d 1304 (La.App. 3rd Cir.1993); see also Harrington [Harrigan] v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986).
The only evident [sic] presented in connection with plaintiffs’ assertion that there was a prior accident and that this accident gave rise to notice by the defendants is contained in plaintiffs’ and defendants pre-trial memorandum. There is no sworn testimony or other documentary evidence sufficient to support this finding. Additionally, plaintiffs’ statement in the post-trial memorandum is not sufficient to meet plaintiffs’ burden. In re Wiley, 862 So.2d 1243 (La.App. 3rd Cir.2003).
As properly noted by defendants, the question is whether there is sufficient evidence in the record to create constructive notice. This is a question of foreseeability and gravity of harm as set forth in Posecai v. WalMart Stores, Inc., 99-122 (La.11/30/99), 722 [752] So.2d 762 and subsequent cases dealing with a business owner’s duty to protect others from the acts of third persons. Clearly such a determination requires consideration of the facts known to the defendants and the potential for significant harm to a bystander.
The facts are clear that Mr. Keller was on a service call for his employer when, through no fault of his, he was struck by the falling body of Ms. Lewis. There is no question that the primary cause of this accident is the actions of Ms. Lewis. Further, there is no evidence that the Monteleone Hotel knew of the possibility of such an occurrence taking place.

(B) Unreasonable risk of harm

The second inquiry is whether the railing in place on the day of the incident was defective as it violated the applicable city building codes and whether this violation created an unreasonable risk of harm for which the Mon-teleone defendants should be liable. Plaintiffs’ assertion is that the effective height of the railing in the area where Ms. Lewis jumped from the roof was *1045 only thirty-eight inches (38") high and the code requires a minimum of forty-two inches (42") high. It is also the contention of plaintiffs and Cox that defendants failed to exercise reasonable care in its maintenance of the railing because two pickets were missing from the fence.
Defendants contend that the accident in question was caused by the action of Ms. Amy Lewis. Further, | ^defendants state in their post-trial memo, that there was no warning that Amy Lewis was going to commit suicide. Nothing about Ms. Lewis’ demeanor or actions alerted the persons or employees in the pool area to suspect that she intended to or even could climb the rooftop fence and commit suicide. Defendants rely on the deposition of Victoria Briggs Wells, the only known eye witness of Ms. Lewis’ conduct up to and during her suicide. In her deposition, Mrs. Wells stated, “There was no obvious sign to me that she was going to jump.” Further, defendants assert that no amount of reasonable security precautions will ever be enough to completely eliminate the threat of injury from a person absolutely determined to commit suicide by jumping off the rooftop.
In further support, defendants called an Architectural expert, George Hero to testify at trial in regards to the rooftop fence’s specifications. Mr. Hero testified that the Monteleone had a five foot two inch iron fence with sharp pickets that curved inward towards the guests. Moreover, he testified that the codes in effect at the time of the incident and the today’s more modern codes all indicate that the height of the guardrail in similar situations should be 43 inches high. Specifically Mr. Hero stated that in his opinion the railing surrounding exceeds all applicable codes and standards that he knew of. Mr. Hero further testified that the height of the guardrail is measured from a walking surface according to the standard building codes in 1997.
The record reflects that plaintiffs and Cox introduced no expert testimony to refute the testimony and opinions of George Hero. Rather, plaintiffs tried to establish that Mr. Hero’s testimony was flawed in that he measured the height of the guardrail from the wrong surface. More specifically, plaintiffs contend that the appropriate starting point was the ledge or parapet at the base of the fence because it allowed someone to step up and climb the railing. Further, if you measured the height of the wall from this point then the guardrail did not comply with the applicable codes requirements. Of interest, Mr. Hero acknowledged that he is not aware of any other cases where this issue had arisen; but he stuck to his opinion that the appropriate foundation from which you pleasure the height of the guardrail is the walking surface. Further, he stated that with the pickets which were at the top of the guardrail, when measuring from the parapet the guardrail more than exceeded the applicable height and it was only without the pickets that there would potentially be a problem. (Assuming that you used the parapet as the starting height).
|7However, even plaintiffs acknowledge that with the pickets the guard railing (measured from the parapet or from the walking surface) is at a height in excess of that required by the Code. Therefore, the only ways plaintiffs can succeed in winning this case is if there is ample evidence to prove that Ms. Lewis jumped at a point where the pickets were in fact missing. Unfortunately, this is where plaintiffs’ argument fails. There is no question that the subsequent investigation revealed that there were *1046 missing pickets in the guard railing in question. However, there is no direct evidence that these missing pickets contributed to this incident.
Upon our review of the record, we find that the trial court did not commit manifest error by finding that the defendants were not liable to Mr. and Mrs. Keller. As represented in the trial court’s reasons for judgment, no evidence was submitted in opposition to controvert Mr. Hero’s testimony and no evidence of the Hotel’s knowledge regarding alleged prior suicides was presented. Mr. and Mrs. Keller failed to present sufficient evidence to prove that the Hotel owed them a duty and the record lacks evidence to show that Ms. Lewis’ suicide could have been prevented. Accordingly, we affirm.

DECREE

For the above mentioned reasons, we find that the trial court did not commit manifest error and affirm.
AFFIRMED