469 So.2d 22 (1985)
Paul ROBERTSON
v.
GEOPHYSICAL SERVICE, INC.
No. 84 CA 0307.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
*23 James R. Sutterfield, R. Joshua Koch, Jr., New Orleans, for defendant-appellant.
Louis P. Selig, Baton Rouge, for plaintiff-appellee.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
This is an action brought by Paul Robertson against Geophysical Services, Inc., to recover for damages allegedly done to a pleasure boat owned by him, the Silver Eagle, by the wake of a vessel or vessels owned by Geophysical Services, Inc. (GSI). The trial court awarded plaintiff $9000.00 for damage to the Silver Eagle and $5000.00 for mental anguish and awarded plaintiff's expert witness, Capt. George Blann, the sum of $1111.00. We reduce the award and, as amended for the reduction, affirm the judgment of the trial court.
At the time of the alleged incident, April 1980, the Amite River was in flood stage. The pier where Robertson customarily docked the Silver Eagle was under two feet of water. The Silver Eagle was a New England lobster boat some 30 feet in length, which had been converted to a cabin cruiser. The Silver Eagle was secured to the pier by two breast lines, to the land by a bow line attached to a tree, and to the bottom of Amite River by an anchor attached to a stern line. The boat rode above the pier, which as we have stated, was submerged.
Several seismic vessels owned by GSI travelled up and down the Amite River creating a wake. Robertson contends the wake pushed the hull of the Silver Eagle, which was made of seamed wooden planks, into the pier, causing the hull to leak at the seams in the planks.
GSI was contacted by Robertson and offered to pay for the repair of the Silver Eagle if GSI were at fault. Robertson insisted, he testified, that GSI send a marine surveyor to estimate the damages. Robertson testified he installed an auxiliary bilge pump on the vessel to pump out the water that was leaking into the vessel. However, he never attempted to recaulk the gaps opened when the Silver Eagle struck the pier. Finally, the Silver Eagle sank two and a half months after its alleged collision with the pier. It remained under water for about a year and was then *24 dragged on shore. Photographs show extreme rotting on the vessel, the major portion of which, expert testimony reveals, almost certainly occurred before the Silver Eagle sank, as submergence of the vessel after sinking would have retarded rotting.
The standard of review in maritime cases, of which this is an example, is that the trier of fact will not be reversed as to findings of fact unless those findings are clearly erroneous. See discussion in Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La.App. 3rd Cir.1980).
Applying that test, we find that the trial court was not clearly wrong in finding that the wake generated by the GSI vessels damaged the Silver Eagle. However, we cannot agree with the trial court's conclusion that Robertson properly sought to mitigate damages to his boat. The owner of a vessel that is damaged must exercise that degree of care that society demands of a reasonable person to mitigate damages, or else, if the victim be negligent in his failure to mitigate damages, he is barred from recovery. Tennessee Valley Sand & Gravel Co. v. M/V Delta, 598 F.2d 930 (5th Cir.1979).
In the present case, according to expert testimony, the cost of recaulking the seams opened through the Silver Eagle's collision with the pier would not have been more than $100.00. Recaulking, it appears, could have been accomplished either from within the hull or from the outside. To recaulk from the outside, cement blocks could have been used to turn the vessel slightly on its side and expose the opened seams. Robertson made no attempt to recaulk the vessel, giving the excuse he wanted to preserve the evidence of damage. This statement in itself is evidence of a will not to mitigate damages.
As Robertson failed to mitigate damages, and as sinking of the Silver Eagle could have been prevented by the simple expedient of recaulking the vessel, Robertson is barred from recovery for the sinking of the vessel. All that Robertson can receive is the expense of recaulking. The recaulking material and labor we estimate would have cost $100.00 and the cement blocks needed to turn the vessel would have cost an additional $100.00. Thus, we limit recovery for damage to the vessel to $200.00.
"In order to recover for mental anguish, it must be proven that plaintiff suffered more than minimal worry and inconvenience over the consequences of the damage." Meyers v. Basso, 381 So.2d 843 at 845 (La.App. 1st Cir.), writ refused, 384 So.2d 794 (La.1980). Here, there is no showing that Robertson required medical or psychiatric care as a result of the sinking of the Silver Eagle. All that is shown is minimal worry and inconvenience, in the language of Meyers v. Basso. Hence, the trial court erred in awarding any sum for mental anguish.
The trial court awarded Capt. George Blann the sum of $1111.00 for his expert testimony. We find this sum excessive, and reduce his expert witness fee to $200.00
The judgment of the trial court is amended to reduce the sum awarded to Paul Robertson to $200.00, and the expert witness fee of Capt. Blann to $200.00. The award of $5000.00 for mental anguish is stricken. As thus amended, the judgment of the trial court is affirmed. All costs shall be paid by Paul Robertson.
AMENDED AND AFFIRMED.