MAX N. TOBIAS, JR., Judge.
11 Jane Murdock, the defendant/appellant herein, has filed an appeal contending that the trial court erred when it entered judgment in favor of the plaintiff/cross-appellant/appellee, Webapps, L.L.C., in a lease dispute matter. After reviewing the facts and applicable law, we affirm the judgment of the trial court.
The basic facts are not in dispute. On 15 July 2010, Ms. Murdock, as lessor, and Webapps, as lessee, entered into a three-year commercial property lease for the building located at 1582-84 Magazine Street in New Orleans. The term of the lease was from 1 September 2010 through 31 August 2013. Webapps, a local internet software company, paid a deposit of $13,704.00 to Ms. Murdock upon commencement of the lease. The lease also provided that the lessee could terminate the lease early by giving the lessor 90-days’ notice.
On 6 December 2012, Webapps gave Ms. Murdock the required 90-days’ notice terminating the lease. In the termination letter, Webapps asked for the 12return of it deposit within 30 days. Webapps vacated the property on 6 March 2013.
As of 6 April 2013, thirty days later, Ms. Murdock had not returned the deposit. In addition, she did not provide Webapps with an itemized list of any damages allegedly caused by Webapps justifying her retention of all or part of the deposit.
On 24 April 2013, counsel for Webapps sent Ms. Murdock a letter, demanding a return of its deposit. In addition, because Webapps had made improvements to the interior of the property at its own expense, it also demanded reimbursement for the *767 costs of those improvements in an amount of $14,813.86.
Ms. Murdock responded to Webapps’ demand by email the next day. In that email,, she refused to return the deposit alleging that Webapps had damaged the building, the floors, and a ceiling, and had committed code violations. This was the first notice that Ms. Murdock was holding Webapps responsible for purported damage to the property.
On 9 May 2013, Webapps requested an itemized list/estimate of the repairs Ms. Murdock contended were required as a result of any actions or omissions by Web-apps. She did not respond. Further, the request that Webapps and/or its experts have access to the property for an inspection or to estimate the cost of such repairs was ignored.
| aWebapps filed suit on 29 July 2013, demanding return of its deposit, reimbursement for improvements, and penalties and attorney’s fees.[1] Ms. Murdock answered and filed a reconventional demand, the latter of which was. later dismissed with prejudice by. the trial court.
A bench trial was held on 16-16 June 2015. On 15 September 2015, the trial court rendered judgment in favor of Web-apps. Specifically, the court stated in its reasons for judgment:
Despite the fact that Ms. Murdock testified that she hired independent contractors/handymen to do the repair work on the building after plaintiff’s exit, she has no invoices, bills, statements, or estimates showing the nature of the work that was done; nor was there any invoice showing how many hours were worked or the hourly rate charged.
Additionally, Ms. Murdock produced no evidence, other than her own speculative testimony, that Webapps caused damage to the property by any of the “modifications” that she complains of in her April 25,2013 letter.
[[Image here]]
The Court finds that Ms. Murdock’s April 25, 2013 response to Webapps’ demand was untimely and did not properly itemize deductions from the deposit and the reasons for such deductions, and further finds that Ms. Murdock was unjustified and clearly wrong in her failure to return the deposit within thirty (30) days of the termination of the lease. Therefore, the Court finds that plaintiff is entitled to recover pursuant to La. R.S. 9:3251, et seq.
The trial court held that Webapps was entitled to a return of its deposit, $200 in damages pursuant to La. R.S. 9:3252 A, as well as costs and attorney’s fees incurred as of 17 April 2015. In addition, the judgment directed Webapps to Rsubmit a statement of costs and reasonable attorney’s fees expended from 17 April 2015 through the conclusion of the matter. Ms. Murdock was given 15 days from service to file a motion to traverse that statement. If she failed to do so, those additional amounts sought by Webapps would be found to be reasonable and would be awarded by a supplemental judgment.
Ms. Murdock’s motion to traverse was filed on 2 October 2015. In that motion, however, Ms. Murdock failed to challenge any of the documented attorney time, did not submit a memorandum of law in support, did not attach any exhibits, and failed to file a rule to show cause or request a hearing.
*768 The supplemental judgment was issued by the trial court on 16 October 2015, awarding Webapps some, but not all, of the submitted costs and attorney’s fees.[2] Ms. Murdock appealed the final- judgments; Webapps answered the appeal, seeking the remaining fees and costs that were incurred though the 15-16 June 2015 trial.
Partly at issue in this case is the interpretation and application of the Lessee’s Deposit Act, La. R.S. 9:3251, et seq. This is a question of law, requiring de novo review. However, as to the testimony presented at trial and the trial court’s determinations of credibility and findings of fact, a manifest error/clearly wrong standard of review is used.
The purpose of the Lessee’s Deposit Act was, to give the tenant a remedy against the arbitrary retention of a security deposit by providing for attorney’s fees | swhere the lessor wrongfully retained the deposit. Curtis v. Katz, 349 So.2d 362; 364 (La.App. 4th Cir.1977).
The relevant statutes are quoted below in pertinent part:
La. R.S. 9:3251 provides:
A. Any advance or deposit of money furnished by a tenant or lessee to a landlord or lessor to secure the performance of any part of a written or oral lease or rental agreement shall be returned to the tenant or lessee of residential or dwelling premises within one month after the lease shall terminate, except that the landlord or lessor may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises. If any portion of an advance or deposit is retained by a landlord or lessor, he shall forward to the tenant or lessee, within one month after the date the tenancy terminates, an itemized statement accounting for the proceeds which are retained and giving the reasons therefor. The tenant shall furnish the lessor a forwarding address at the termination of the lease, to which such statements may be sent. [Emphasis supplied.]
La. R.S. 9:3252 A states:
The willful failure to comply with R.S. 9:3251 shall give the tenant or lessee the right to recover actual damages or two hundred dollars, whichever is greater, from the landlord or lessor, or from the lessor’s successor in interest. Failure to remit within thirty days after written demand for a refund shall constitute willful failure.
Finally, La. R.S. 9:3253 provides:
■In an action brought under La. R.S. 9:3252, the court may in its discretion award costs and attorney’s fees to the prevailing party.
Ms. Murdock listed four reasons she was not returning the deposit in her 25 April 2013 letter. First, she complained that by enclosing the spaces, the building Rwas no longer “up to code.”[3] Next, Ms. Murdock stated that the building- of the wall without permits also was not up to code. She further claims that cheap rugs used without pads and plastic underneath “have attached [sic] themselves to the floors and will require that the floor be sanded and resealed.” Finally, because the exercise bars were attached to the rafters of the *769 building, she would have to replace'the structural supports and install new sheet-rock.[4]
At the trial of this matter, Webapps presented witnesses who disputed Ms. Murdock’s claims of damage enumerated in her 25 April 2013 letter. Lettie Elizabeth Fleming, the owner of A-1 Cajun Cleaning Janitorial Service, was qualified as an expert in the cleaning, -treating, and maintenance of concrete flooring. She testified that the problem with the concrete floors was caused by improper sealing: .the protectant that covers the stain or color was peeling from the floors because it had not been properly sealed; Ms. Fleming also testified that the deterioration!was accelerated by moisture in the building that she observed. The trial court noted that the undisputed testimony was that water intrusion at the doors and windows predated Webapps’ occupancy of the property. No evidence was presented by Ms. Murdock to contradict Ms. Fleming’s testimony. In fact, Ms. Murdock testified that she and two handymen, not flooring professionals, had stained and sealed the concrete floors themselves. .
It is undisputed that the lease and attached addenda provided that certain work would be done, by Ms. Murdock before Webapps took occupancy.. This ^included the addition of some partition walls -to create separate offices for Webapps’ employees. The work was not completed by 1 September 2013, the date Webapps took possession of the property. Additional work was being done, as agreed to. in the lease on the building that disrupted Web-apps’ operations; the work continued until early in 2013.
Samuel Prokop, the CEO of Webapps, testified that he hired Robert Swain, an independent contractor/handyman, to extend the partitions walls to the ceiling and create a wall to turn one office into two offices... The partition walls were extended to reduce the noise between the offices. Mr. Prokop admitted that he did not discuss his plan to further modify the space with Ms. Murdock; he did not think it was necessary. However, he testified that Ms. Murdock came to the building several times while Mr. Swain was working. She mentioned her displeasure with the additional modifications in an email but never told Webapps to remove the additional changes.
Mr. Prokop stated that shortly after Webapps moved into the building, the fire marshal required the installation of a fire escape- as Webapps was using the second floor for office space. Because the second floor was being used for business, not residential purposes, Webapps needed to have a second means of egress by way of an external fire escape. While the stairs were being built, Webapps could not use the second floor. Ms. Murdock relieved Webapps from paying rent while the work took place.
Mr. Prokop decided to end the lease early because it was increasing difficult to deal with Ms. Murdock. Pursuant to the lease, Webapps notified her 90 days in 18advance that it would, be vacating the property effective 6 March 2013.[5] Web-apps also offered to sell her some of the improvements, informed her that the power and water would be off as of 6.March *770 2013, and asked for the return of its deposit within 30 days.[6]
Before turning the building back to Ms. Murdock, Webapps removed its furniture, repaired the walls where pictures were hung, and removed the exercise bars; ‘Mr. Prokop removed the bars himself. Mr. Swain was hired to patch any and all holes created by Webapps so it could return the building in as good a condition as it could. The repairs .included the ceiling in the exercise room once the bars were removed. Once everything had been removed and the repairs made, a service was used to thoroughly clean the building.
Mr. Swain testified that early in the lease period, he was hired to extend the partition walls to the ceiling, design and install a wall to create two offices out of one, and perform some minor electrical work and painting. Mr. Swain admitted that he was neither a licensed contractor nor electrician and did not obtain any permits to perform the work. He further testified that he was uninsured at the time he performed the work. He stated that a building permit was not necessary as he was not building any weight-bearing walls. Mr. Swain affirmed that he had repaired the ceiling in the exercise room.
Ms. Murdock testified that Mr. Prokop had provided the terms of the lease. She also admitted that she was aware of modifications made to the interior of the building well before Webapps vacated the property. She never asked Webapps to |flremove any of the alterations made inside the structure. She admitted that once Webapps had moved out, she had complete and total access to the building. Ms. Mur-dock also testified that she did not send Webapps a written estimate outlining the costs of repairing the damage by Webapps as of 5 April 2013. She did not have a written estimate when she received Web-apps’ 24 April 2013 letter. Her response the next day did not contain an estimate of what could rectify the damage.
On 9 May 2013, Webapps, through counsel, responded to Ms. Murdock’s letter of 25 April 2013. Again, it was requested that she provide an itemized list/estimate of the repairs' that she claimed had to be made that had been caused by Webapps’ occupancy by no later than 31 May 2013. Webapps suggested that once the estimate was received, experts would inspect the premises and assess her purported damages.
In June 2013, Ms. Murdock' sold the building. Once the new owners started working on the property, it was discovered that the back exterior wall contained termites; Ms. Murdock did not have a termite contract with an exterminator. Ms. Murdock blamed Webapps for thé infestation because after Hurricane Isaac, Web-apps would not allow her workers access to the interior of the building to make repairs. Mr. Prokop testified that the roof leaked and water often intruded inside while Webapps occupied the building. No witnesses were presented by Ms. Murdock to link the termite infestation' with any action or inaction taken by Webapps.
During discovery, Ms. Murdock produced a number of canceled checks to 'prove how much she had spent to repair 'the building. She did not have, however, |inany invoices, estimates, or other documentation to support her reeonventional demand. A few of the checks were written *771 from her personal account and the rests from 1225 Magazine LLC. Ms. Murdock testified that she did not have a separate account for the subject property and used the checking account associated with 1225 Magazine LLC as her business account. None of the cheeks contain notations identifying the work that was performed. The checks demonstrate that except for what was done to repair the termite damage, the work Ms. Murdock claims was due to Webapps’ negligence began in late March 2013 and continued through May. Ms. Murdock admitted that she had no estimates, invoices, or receipts from any of the people working on her house to repair the damage.
Two witnesses testified on Ms. Mur-dock’s behalf, Brian Massey and Eric St. John. Mr. Massey, a plasterer, cement finisher, and brick mason, testified that he had worked for Ms. Murdock for a few years. After Hurricane Isaac made landfall, Mr. Massey assisted her in making repairs to the building. He testified that on two occasions, they could not access the interior of the building. After Webapps vacated the premises, Mr. Massey did plastering, fixed the roof, and tore down a back wall that was infested with termites. Mr. Massey testified that he worked under the direction of Charles Pumilia; Mr. Pu-milia paid him directly.
Mr. St. John testified that he was a general contractor. He testified that he worked on -the subject building for Ms. Murdock and the subsequent buyers. After Hurricane Isaac, Mr. St. John came to the property with Charles Pumilia to look at the damage. This is when the termite infestation was discovered. Mr. St. John stated that it was the most termites he had ever seen. He helped to repair the wall and the roof damage that was localized to the back wall where the termites were found. While working, he was directed by Mr. Pumilia.
| T1We now turn back to the applicable statutes. Pursuant to La. R.S. 9:3251, Mr. Murdock was obligated to return Web-apps’ deposit within 30 days after the lease was terminated. Because the lease terminated on 6 March 2013, Ms. Murdock had 30 days, or until 5 April 2013, to act. In the alternative, the statute provides that should the landlord retain part or all of the deposit, the landlord must provide to the lessee an itemized statement within one month after the date the tenancy terminates outlining the proceeds which are retained and giving the reasons therefor. It is undisputed that Ms. Murdock failed to comply with either option.
On 24 April 2013, Webapps made written demand on ‘Ms. Murdock for a refund of its security deposit. Failure to remit same within 30 days constitutes a “willful failure” to comply with La. R.S. 9:3251. See La. R.S. 9:3252. Because of her willful failure, Webapps became entitled to recover actual damages or $200, whichever is greater. Because Webapps had no damages, the trial court correctly awarded the $200 called for by the statute. Id.
Ms. Murdock maintains that her letter of 25 April 2013 was sufficient to satisfy the requirement that she provide an itemized statement “accounting for the proceeds which are retained and the reasons therefore.” La. R.S. 9:3251.
We discussed this issue in Woodery v. Smith, 527 So.2d 389, 390 (La.App. 4th Cir.1988), we stated:
One reason the statute requires an itemization is to prevent a lessor from arbitrarily withholding the deposit. O’Brien v. Becker, 332 So.2d 563 (La. App. 4th Cir.1976). In the instant case, defendant timely answered plaintiffs written demand, but her letter failed to’ *772 properly itemize the deductions and reasons therefor. The court in Garb v. Clayton-Kent Builders, Inc., 307 So.2d 813, 815 (La.App. 1st Cir.1975), stated that “ ‘an itemized statement accounting for the proceeds which are retained and giving reasons therefor’, requires categorical specification which reasonably apprises Lessee of the nature of the elements of wear and tear involved.... [F]or example, that itemization envisions a separate listing of each aspect of wear and tear such as painting, repair of wallpaper or plastered walls, repair to plumbing or lighting fixtures or repair or replacement of broken or damaged items such as appliances or particular articles of furniture.” Although defendant intended that her letter of June 2, 1986, serve as an explanation for withholding plaintiff’s .deposit, we find that she did not adequately comply with R.S. 9:3251. The law is well settled that even if there is a valid dispute over a lease, a lessor must comply with the statute or suffer the penalties provided, Altazin v. Pirello, 391 So.2d 1267 (La.App. 1st Cir.1980); Moore v. Drexel Homes, Inc., 293 So.2d 500 (La.App. 4th Cir.1974), writ denied, 295 So.2d 812 (La.1974).
The Second Circuit Court of Appeal agreed in Vinson v. Henley, 38,006, p. 9 (La.App. 2 Cir. 1/28/04), 864 So.2d 894, 899:
For these reasons, we also find that the trial court did not err in awarding attorney’s fees to Vinson in the amount of $750. Henley argues that the award was erroneously made because there was no evidence that Henley acted arbitrarily. or capriciously. We disagree. The evidence clearly shows that Vinson’s attorney made a written demand for an itemized statement, accounting for the deposit proceeds retained by Henley on February 6, 2002. No evidence was presented that such a statement was ever forwarded by Henley nor does Henley allege that she mailed one. Under LSA-R.S. 9:3252, Henley’s failure to provide such a statement within thirty days of written demand constitutes willful failure to comply with the requirements of LSA-R.S. 9:3251. This failure gives rise to the action for damages and for an award of attorney’s fees in favor of the prevailing party. LSA-R.S. 9:3252.-
We affirm the trial court’s finding that Ms. Murdock’s 25 April letter did not comply with the statute; it simply did not account for the proceeds she was retaining. Webapps even gave her additional time to provide a proper itemized statement: until 31 May 2013. The exhibits indicate that most, if not all, of the 11swork performed on the building was completed by late May, Thus, Ms. Murdock had ample time to proride a statement, complete or even partial, but did not.
The award of attorney’s fees to Webapps was done under the authority of La. R.S. 9:3253 and is within the trial court’s discretion. The lower court awarded Webapps the total amount of $27,868.75 in attorney’s fees and $5,490.15 in costs in its original and supplemental judgments. We find that these amounts are well within the discretion of the court.
Webapps answered the appeal, seeking additional costs and attorney’s fees not awarded by the trial court in its supplemental judgment. However, we find that the trial court did not abuse its discretion by denying these extra amounts-.
In its answer to the appeal, Web-apps requested an award of costs and attorney’s fees incurred in response to Ms. Murdock’s appeal. As Webapps successfully defended the appeal, we award it $3,000 in additional attorney’s fees and *773 amend the supplemental judgment accordingly. We decline to award additional costs.
Based on the foregoing, we affirm the judgments of the trial court.

AMENDED; AFFIRMED AS AMENDED.

. The trial court found that, pursuant to the lease, Webapps was not entitled to recover the cost of alterations or additions made to the property. Webapps did not appeal that decision.

. The court did not award $7,593.75 in attorney’s fees or $2010.13 in costs. These amounts are sought by Webapps in it answer to the appeal.

. The court is unclear as to the "codes” Ms. Murdock was referring to in her letter. She did mention fire codes in her testimony at trial.

. Ms. Murdock was especially aggrieved by the installation of the exercise bars because the property had been constructed in 1890 and was not built to have men doing pull-ups from the bars.

. The 6 December 2013 letter was sent both by email and certified mail,

. The parties have discussed what Webapps meant when it asked for its deposit within 30 days. The trial court seemed to conclude that it was an official demand required by law. We, however, find that Webapps meant 30 days from the date it vacated the property, 6 March 2013. Clearly, Webapps could not seek the return of its deposit while it was still occupying the building.