AMES GROWE, III

VERSUS

RAYMOND JOHNSON AND
JOHNSON REALTY &
INVESTMENT CO.

\* NO. 2020-CA-0143

\*

\* COURT OF APPEAL

\*

\* FOURTH CIRCUIT

\*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2018-01744, SECTION "C"
Honorable Veronica E Henry, Judge
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*

(Court composed of Judge Regina Bartholomew-Woods, Judge Paula A. Brown,
Judge Dale N. Atkins)

Stephen O'Brien Scandurro
Timothy David Scandurro
SCANDURRO & LAYRISSON, L.L.C.
607 St. Charles Avenue
New Orleans, LA 70130-3411


    COUNSEL FOR PLAINTIFF/APPELLEE


Pierre V. Miller, II
Patrick Hannon Patrick
PATRICK MILLER LLC
400 Poydras Street, Suite 1680
New Orleans, LA 70130


    COUNSEL FOR DEFENDANT/APPELLANT

**AMENDED & AFFIRMED AS AMENDED**
**FEBRUARY 17, 2021**

RBW

PAB

DNA

This matter arises from a contractual dispute between a landlord and a former tenant. Defendants-Appellants/Cross-Appellees, Mr. Raymond Johnson, and his company Johnson Realty and Investment, Co. ("Mr. Johnson"), appeal from a judgment in favor of Plaintiff-Appellee/Cross-Appellant, Mr. Ames Growe, III ("Mr. Growe"), awarding him a partial refund of his security deposit and reimbursement for the replacement cost, minus depreciation, of his damaged furniture. Mr. Growe files a cross-appeal seeking full replacement cost of the furniture, general damages, and attorney's fees.

For the reasons that follow, we amend the judgment of the trial court to accurately reflect the trial court's award regarding the security deposit, amend the judgment to include damages for mental anguish, and affirm the remainder of the trial court's judgment.

# FACTUAL BACKGROUND

Mr. Johnson, through his company Johnson Realty and Investment, Co., owns an apartment building located at 7849 Read Blvd. in New Orleans, Louisiana ("the property"). According to Mr. Johnson, he lived at the property part-time for approximately two (2) weeks every month. Mr. Johnson collected rents, handled repairs, including, but not limited to plumbing repairs, and performed other duties associated with managing the property. When he traveled, his wife, Bibiana Jones Johnson ("Mrs. Johnson"), managed the property on his behalf, with the exception of repair work.

On January 5, 2013, Mr. Johnson entered into a written month-to-month lease with Mr. Growe to rent an apartment located on the property. The lease stipulated that Mr. Growe would pay rent in the amount of $600.00 per month, as well as a security deposit in the same amount. Mr. Growe moved in with his own furniture including an armoire, a television stand, a buffet, a sofa, an ottoman, and a loveseat. Mr. Growe testified that he purchased the furniture in 2011.

In February 2014, one year after entering into the lease, Mr. Growe began experiencing water intrusion-related problems. Mr. Growe testified that water leaked from the pipes in the apartment above his, down his apartment walls, and onto his bedroom floor soaking the carpet and furniture. Additionally, water leaked from the air conditioner unit in Mr. Growe's apartment and from the air conditioner unit in the apartment above.

Mr. Growe testified that he complained to Mr. Johnson about the water-intrusion in his apartment. Instead of hiring a professional company to do repairs, Mr. Johnson replaced the leaky pipe and installed new sheetrock himself. Mr. Growe testified that three (3) days after the repair of the initial leak, the pipes

2

began leaking again and needed to be repaired again. Regarding the air conditioner, Mr. Johnson sent individuals to treat the unit with chemicals every two weeks. No permanent or semi-permanent repairs were ever made to the air conditioner which remained a persistent cause of leaking throughout Mr. Growe's tenancy. On one occasion, Mr. Growe returned from a hospital stay, due to his heart problems, and found the apartment flooded; Mr. Johnson's wife provided Mr. Growe with towels to soak up the water.

Mr. Growe grew angry and frustrated with the repeated instances of leaking and flooding. He reported he had to wait weeks for Mr. Johnson to address the flooding only to have the flooding repeatedly start again. Mr. Growe offered eighteen (18) pictures into evidence showing the condition of his furniture before and after his move, as well as, the extent of the flooding and water damage to the apartment throughout the four and one half (4½) years he was a tenant.

To address the flooding, Mr. Johnson either used a wet-vacuum to clean up the water or Mr. Johnson sent gentlemen to vacuum the water; however, the gentlemen did not move the furniture to fully vacuum the area, but vacuumed around the furniture. Mr. Growe testified that due to heart problems, gout, and other medical issues, he was unable to move the furniture himself. Mr. Growe further testified that Mr. Johnson's offers to fully clean or replace the carpet were always conditioned upon Mr. Growe moving the furniture. He further stated that Mr. Johnson would not pay to have the furniture moved.

Mr. Growe testified that as a result of the water running down the walls and behind his furniture, the pictures on the walls bowed from water damage; the apartment began smelling of mold; the furniture buckled and mold began to grow on it; all of the aforementioned was attributable to the persistent water leaking

3

problems. He made frequent attempts to clean the furniture. Mr. Growe recalled that on one occasion when water damaged his nightstand and buffet, Mr. Johnson paid him the cost to replace both items.

Mr. Juan Sede, Mr. Growe's former neighbor and Mr. Johnson's former tenant, testified to having visited Mr. Growe's apartment and experiencing breathing difficulty because of the extent of the mildew smell in the apartment. He reported the smell was so strong that he was unable to enter the apartment. Mr. Sede stated he witnessed wet floors and carpets while standing in Mr. Growe's doorway. Mr. Sede testified that he had moved out of his apartment after experiencing the same flooding and mold problems as reported by Mr. Growe.

Near the end of Mr. Growe's tenancy, a new parking rule was implemented allowing for free parking in the property's lot for one car and a charge of thirty-five dollars ($35) a day for each additional car. Mr. Growe had three (3) cars in his possession. Mr. Growe testified that he parked two (2) of the cars in the property's lot, and the third car was parked on the street. Mr. Johnson contradicted this testimony and stated that Mr. Growe parked all three (3) cars in the property's lot whenever Mr. Johnson was not physically present at the property.

On May 1, 2017, Mr. Johnson posted a notice on Mr. Growe's apartment door terminating his lease. The notice informed Mr. Growe the lease would end on June 30, 2017. Mr. Johnson sent a follow-up letter on June 23, 2017, informing Mr. Growe that he would inspect the property on July 3, 2017.

After receiving notification of the termination of his lease, Mr. Growe had an opportunity to speak with Mrs. Johnson. Mrs. Johnson testified that as he was leaving, Mr. Growe complained to her about the mold on his furniture and pointed out to her water within the apartment.

4

On July 2, 2017, Mr. Growe moved out of the property. His furniture, which smelled of mold, had visible mold growing on it and the wooden pieces were buckled due to the water damage. He testified that he was forced to discard his furniture upon moving, because it was damaged beyond repair.

On July 6, 2017, Mr. Johnson inspected the property.[1] Subsequent to the inspection, on July 16, 2017, Mr. Johnson provided Mr. Growe with a "Security Deposit Disposition," - an itemized list of the reasons for retaining Mr. Growe's security deposit – and did not return any of the deposit. The reasons for retaining the deposit included: cleaning the kitchen, replacing grease traps, general cleaning of the apartment, changing locks, parking fees for two extra cars, pest control supplies, and six days prorated rent. Contrary to Mr. Johnson's itemized list, Mr. Growe testified that he had thoroughly cleaned the apartment prior to moving out.

## PROCEDURAL HISTORY

On March 2, 2018, Mr. Growe filed a "Petition for Damages" in the First City Court of New Orleans requesting $6,000.00 in damages relating to the destruction of his furniture and the return of the security deposit. Mr. Growe claimed Mr. Johnson breached his duty as a lessor in violation of La. C.C. art. 2682 et seq., and he demanded damages in the amount of six thousand dollars ($6,000) the replacement value of the furniture; the return of the full security deposit pursuant to La. R.S. 9:3251; attorney's fees; and equitable relief.[2]

---

[1] The inspection did not take place on July 3rd because apparently Mr. Johnson was traveling and unable to conduct the inspection that date.

[2] On September 20, 2019, Mr. Growe fax-filed a "Pre-Trial Order" stating he was seeking: 1) relief due to an illegal eviction – including damages for health-related matters, 2) damages for the furniture, and 3) the return of the security deposit.

On September 26, 2019, following discovery, a bench trial on the merits was held. On November 13, 2019, the trial court issued a judgment in favor of Mr. Growe awarding him $3,167.04, plus legal interest from the date of judicial demand and all costs of the proceedings. On November 15, 2019, the trial court issued its "Reasons For Judgment," and the trial court made the following factual and legal findings:[3]

- Mr. Growe was not wrongfully/constructively evicted;
- Mr. Growe was entitled to damages for the loss of his physical property, specifically for replacement of his furniture and a partial refund of his security deposit in the total amount of $3,167.04;[4]
- Mr. Growe was not entitled to damages for mental anguish, toxic mold and anxiety; and
- Mr. Growe was not entitled to penalty damages or attorney's fees regarding Mr. Johnson's retention of his security deposit.

On November 25, 2019, Mr. Johnson filed a "Motion and Order of Appeal." On February 27, 2020, Mr. Johnson filed the instant suspensive appeal. On June 2, 2020, Mr. Growe filed an answer and cross-appeal.

## DISCUSSION

### *Assignments of Error*

Mr. Johnson asserts the following assignments of error:

1. The trial court erred in its calculation of the amount of the security deposit that is to be refunded to Mr. Growe.

---

[3] It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 2009-0571, p. 78, 61 So. 3d at 572; *See also Double NRJ Trucking, Inc. v. Johnson*, 2017-667, p. 7 (La. App. 5 Cir. 5/16/18), 247 So. 3d 1125, 1131.

[4] Based on our analysis herein-below regarding the trial court's miscalculation pertaining to the security deposit, the total amount awarded by the trial court is incorrect. The total amount that should have been awarded is $2,928.52.

2. The trial court erred in ruling the damage to the furniture was caused solely by the landlord without considering Mr. Growe's duty to mitigate damages; and
3. The trial court erred in fixing furniture damage costs without evidence supporting the amount asked for.

Mr. Growe asserts the following assignments of error:

1. The trial court erred by considering the depreciated value of the furniture and should have awarded full replacement cost;
2. The trial court erred in denying general damages for mental anguish, wrongful eviction, toxic mold, and anxiety; and
3. The trial court erred in determining that a written demand for the security deposit is required to trigger the Lessee's Deposit La. R.S. 9:3251, *et seq*.

## *Analysis*

### *Standard of Review*

"Factual determinations are subject to the manifest error standard of review." *Chimneywood Homeowners Ass'n, Inc. v. Eagan Ins. Agency, Inc.*, 2010-0368, p. 5 (La. App. 4 Cir. 2/2/11), 57 So. 3d 1142, 1146 (citing *Stobart v. State, Through DOTD*, 617 So. 2d 880 (La. 1993)). "Likewise, mixed questions of law and fact are also reviewed under the manifestly erroneous standard of review." *Id.* (citations omitted). The issues raised before this Court are mixed questions of law and fact. Thus, we are bound by the manifest error standard of review.[5]

"It is well settled that a court of appeal may not set aside a trial court's…finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). When considering the reversal of a trier of fact's determinations, 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial

---

[5] *See Noto v. Wong*, 2001-0210, p. 3 (La. App. 4 Cir. 3/20/02), 814 So. 2d 640, 641 (wherein this Court determined there was no genuine issue of interpretation regarding the lease contract, but only whether the provisions of the lease were complied with and thus used the manifest error standard.

7

court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Stobart v. State, Through DOTD,* 617 So. 2d 880, 882 (La.1993). "The inquiry is whether the factual findings are reasonable, not whether the trier of fact was right or wrong." *Id.* (citation omitted). "If in light of the record in its entirety, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact." *Duncan v. Kansas City S. Ry. Co.*, 2000-0066 p. 3 (La. 10/30/00), 773 So. 2d 670, 675 (citing *Sistler v. Liberty Mutual Ins. Co.,* 558 So. 2d 1106, 1112 (La.1990)).

### *Mr. Johnson's Appeal*

### *Calculation of Security Deposit*

Mr. Johnson asserts that the trial court incorrectly calculated the amount of the security deposit to be returned. Mr. Growe paid a $600.00 security deposit at the beginning of his tenancy. At the end of the lease, Mr. Johnson retained the full amount and provided a statement summarizing the reasons for keeping the security deposit. The court determined that some of the reasons listed – such as the general cleaning fee – were the result of wear and tear and not subject to withholding.

Mr. Johnson does not challenge the trial court's conclusion regarding what should be returned, but rather he asserts the trial court's mathematical calculation was in error because the trial court ordered the return of $567.04. Mr. Johnson explains that the trial court ordered the refund of the following amounts from the $600.00 security deposit:

| Item | Amount |
| --- | --- |
| Prorated rent four (4) days | $80.00 |
| Parking Fees | $70.00 |
| Cost of Drip Pans | $15.92 |

8

| | |
|---|---|
| Cost of Screen | $11.26 |
| General Cleaning Fee | $65.00 |
| Refrigerator Cleaning | $20.00 |
| Pest Eradication Supplies | $66.34 |
| **Total** | **$328.52** |

Thus, when the trial court ordered the return of $567.04 it committed a mathematical miscalculation. "Appellate courts have the power to correct errors in calculation in judgments of the district court, which could have been corrected if brought to the notice of the court below." *Trane Co. v. Bellevue Baptist Church of Metairie*, 233 So. 2d 13, 15 (La. App. 4th Ct. 1970) (citing *Union Sulphur Co. v. Campbell*, 207 La. 514, 21 So. 2d 626 (La. 1945); La. C.C.P. art. 2164). Accordingly, Mr. Growe is entitled to a refund of $328.52, as opposed to $567.04 of the deposit, and we amend the judgment of the trial court to reflect this proper amount to be refunded from the security deposit.

As a result of the security deposit mathematical miscalculation, the trial court awarded Mr. Growe a total damages award of $3167.04; the correct damages award should have been $2,928.52. However, because we are going to further adjust damages in favor of Mr. Growe later in this opinion, we do not find it necessary to correct and amend the trial court's damages award at this juncture.

*Mitigation of Harm*

Mr. Johnson asserts the trial court erred by ruling that he was the only party responsible for the damage to the furniture and did not consider Mr. Growe's failure to mitigate the damage to his furniture. Mr. Johnson reports he offered to clean the floors and replace the carpeting in the apartment and requested Mr. Growe move his furniture to allow for the complete cleaning. Mr. Growe testified that due to his physical ailments he could not move the furniture, because it was

heavy. Mr. Growe further stated that he did not pay for the furniture to be moved, because he did not believe that was his responsibility. Mr. Johnson argues that this failure to act by Mr. Growe contributed to the damages to the furniture.

Louisiana law places certain duties on the lessor. "The lessor is bound: (1) To deliver the thing to the lessee; (2) To maintain the thing in a condition suitable for the purpose of which it was leased; and (3) To protect the lessee's peaceful possession for the duration of the lease." La. C.C. art. 2682. "During the lease, the lessor is bound to make all repairs that become necessary to maintain the thing in a condition suitable for the purpose for which it was leased, except those for which the lessee is responsible." La. C.C. art. 2691.[6]

Mr. Johnson met his initial duty to deliver the property to be leased when Mr. Growe moved into the apartment. The trial court found that Mr. Growe was not disturbed in his peaceful possession of the property because the lease was month–to-month and Mr. Johnson properly terminated the lease. Mr. Johnson failed, however, his duty to maintain the property for suitable use. Mr. Growe's apartment did not flood once, but three (3) times. Each time, Mr. Johnson failed to effectively fix the problems, which caused repeated leaks and flooding. Mr. Growe would not be able to live and function comfortably in a home that repeatedly had water-intrusion issues. Because Mr. Johnson was frequently traveling, he was unable to immediately address the complaints of Mr. Growe. Even when he addressed the complaints, Mr. Johnson failed to adequately clean the apartment after the flooding which contributed to the mold that ultimately ruined Mr. Growe's furniture. Mr. Johnson's attempt to shift his burden to Mr.

---

[6] Comment (b) clarifies the content of the article and states further, "the lessor…must make all the necessary repairs, except those that are attributable to the fault of the lessee or are expressly assigned to the lessee by law or contract."

Growe for failing to move the furniture is without merit. Mr. Johnson is responsible for hiring credible cleaning crews who would be able to move the furniture and provide a thorough cleaning of the apartment. Instead, he relied on his own personal cleaning equipment and an unnamed group of individuals who provided incomplete cleaning work and expected Mr. Growe, who suffered from health problems, to shoulder the burden of moving the furniture. Finally, Louisiana law placed a duty on Mr. Johnson to make repairs when the apartment was flooded. *See* La. C.C. art. 2691. The trial court found that Mr. Johnson's repeated failure to properly fix the flooding issues was the sole reason the furniture was damaged, not the furniture's location within the apartment. We do not conclude that the trial court was manifestly erroneous in finding that Mr. Johnson was solely responsible for the damage to Mr. Growe's furniture. Thus, Mr. Johnson's assignment of error is without merit.

*Valuation of Mr. Growe's Furniture*

Mr. Johnson and Mr. Growe both assert that the trial court erred in calculating the cost for replacing Mr. Growe's furniture. Mr. Johnson contends that the trial court erred in awarding any monies for Mr. Growe's furniture when Mr. Growe offered no evidence of the value of the furniture. Conversely, Mr. Growe asserts the trial court erred in awarding replacement cost minus depreciation for the furniture; he seeks the full replacement cost of the furniture. Alternatively, Mr. Growe requests that the depreciation percentage be lowered to a *de minimus* amount in consideration of the furniture being "like new" at the beginning of his tenancy.

In making its monetary award for the damaged furniture, the trial court found that Mr. Growe's furniture was "like new" when he placed it in the

apartment. The trial court further found that the damage to the furniture was so severe that repairs were not possible, and Mr. Growe was entitled to have the furniture replaced. The trial court determined that the replacement cost should be based on a depreciated value because the furniture was ten (10) years old by the end of the lease. The depreciated value was subtracted from the cost of a new set of furniture and not the original cost of the furniture.

In determining damages, the trial court is granted great discretion. *Brown v. Williams*, 36,863, p. 11 (La. App. 2 Cir. 7/31/03), 850 So. 2d 1116, 1124. The damages awarded by the trial court may only be disturbed when the record "show[s] that the factfinder abused its broad discretion in making the award." *Id.* (citing *Jackson v. A.L. & W Moore Trucking,* 609 So. 2d 1064 (La. App. 2d Cir.1992)). The question is not whether a different damage award is more appropriate; but rather, whether the trial court's decision is "based on justifiable inferences from the evidence and is reasonably supported by the record." *Id.*

The primary goal of awarding damages "is to restore the property, as nearly as possible, to its condition immediately prior to the damage." *Brown*, 36,863, p. 11, 850 So. 2d at 1124. The court has three (3) options when calculating damages: "(1) the cost of restoration if the damaged item can be adequately repaired; (2) the difference in value prior to and after the damage; or (3) the cost of replacement, less reasonable depreciation, if the value before and after the damage cannot be reasonably determined." *Id.* (citing *Summarell v. Ross,* 27,160 (La. App. 2 Cir. 8/23/95), 660 So. 2d 112; *Cenac v. Duplantis,* 407 So. 2d 424 (La. App. 1st Cir. 1981)).

In the current case, the trial court determined that the furniture could not be repaired as espoused in option one (1) of the *Brown* case. The trial court based its

decision on the pictures of the furniture, which were introduced into evidence, along with the testimony of Mr. Growe. Ultimately, the trial court chose option three (3), when it awarded Mr. Growe a sum of money equal to the replacement cost of the furniture, minus reasonable depreciation cost. While it is unclear why the trial court choose option three (3), as opposed to option (2), the difference in value prior to and after the damage, in accordance with *Brown*, we find that the trial court acted within its authority in choosing this option.

In awarding damages for the ruined furniture, the trial court accepted Mr. Growe's uncontroverted testimony that he received an estimate of $5,200 to replace the furniture.

> '[W]here no contradictory evidence is presented the plaintiff's testimony as to the value and description of the property, including the place of purchase and the price, may satisfy the burden of proof of the plaintiff, provided such testimony contains a minimal degree of detail or specificity as to value to support an award of monetary damages.'

*Feingerts v. Louisiana Citizens Prop. Ins. Corp.*, 2018-0381 p. 19 (La. App. 4 Cir. 2/13/19), 265 So. 3d 62, 75, *writ denied*, 2019-00436 (La. 9/6/19), 278 So. 3d 364 (quoting *Cho v. Royal Oldsmobile Co., Inc.*, 98-0527, p. 8 (La. App. 5 Cir. 11/25/98), 722 So. 2d 1138, 1142 (citations omitted)). Furthermore, it is well-settled that "the trial judge is in the best position to weigh the credibility of all the witnesses testifying before him, and thus that his findings should be accorded great weight by the appellate court." *Fortenberry v. Ellis*, 217 So. 2d 792, 794 (La. App. 4th Ct. 1969) (citing *Orlando v. Polito*, 228 La. 846, 84 So. 2d 433 (La. 1955)). In the current case, the trial court believed Mr. Growe's testimony about the cost of the furniture. Beyond the testimony, the trial court considered the pictures showing the condition of the furniture before and after the apartment flooded and

found these pictures sufficient to show the extent of the damages. Furthermore, Mr. Johnson offered no evidence to contradict Mr. Growe's estimated value. Thus, we do not find that the trial court committed manifest error in viewing Mr. Growe's testimony favorably.

After accepting the estimate provided by Mr. Growe, the trial court determined that damages should be calculated based on replacement cost minus depreciation at 5% per year. This amounted to an award of $2,600 for the furniture. Mr. Johnson asserts that because there was no proof in the form of an estimate or appraisal, regarding the extent of damages and how much the new furniture would cost, the trial court should not have made a determination of damages. However, pursuant to option three (3) of *Brown*, we find this requirement unnecessary. Moreover, "[w]hen it is clear that a plaintiff has sustained some damages as a result of the fault of the defendant…his demands will not be rejected merely because he cannot establish exactly the amount suffered." *Brantley v. Tremont & Gulf Ry. Co.,* 226 La. 176, 184-185, 75 So. 2d 236, 239 (1954) (internal citations omitted).

Additionally, it is reasonable for the trial court to calculate depreciation costs into the award. In *Feingerts*, when faced with a plaintiff whose furniture had been ruined, like Mr. Growe's, due to water damage, this Court noted that proof of *depreciation* of the furniture should be provided, as opposed to *full replacement value*. 265 So. 3d at 75.[7]

The price offered by Mr. Growe's testimony is not unreasonable for the cost of a furniture set, and a five percent (5%) depreciation is a reasonable offset. The

---

[7] "…[I]n order to recover the policy limits, Feingerts had to prove $ 100,000.00 in damages *(including any depreciation)*" (emphasis added).

trial court did not abuse its wide discretion in both awarding damages and the depreciated amount calculated. Thus, we affirm the amount awarded for the replacement of the furniture, and find both Mr. Johnson's and Mr. Growe's assignments of error regarding the same to be without merit.

### Mr. Growe's Appeal

#### General Damages for Uninhabitable Property

Mr. Growe asserts that the trial court erred in failing to award general damages for mental anguish, wrongful eviction, toxic mold, and anxiety associated with his property being uninhabitable due to the water intrusion. Mr. Growe states the trial court improperly considered illegal eviction and toxic tort rather than violations of La. C.C. art. 2682[8] and La. C.C. art. 2696.[9] Mr. Growe asserts he is entitled to damages based on the breach of the aforementioned codal provisions. This Court finds Mr. Growe's assertion is correct and that the trial court should have considered damages in light of those codal provisions.

"[A]s a matter of law, a tenant is not precluded from seeking nonpecuniary damages for breach of a contract of lease…." *Ganheart v. Exec. House Apartments*, 95-1278, p. 7 (La. App. 4 Cir. 2/15/96), 671 So. 2d 525, 529. However, the plaintiff has the burden of proving the damage he suffered as a result of the defendant's fault. *Id.* "An award of non-pecuniary damages for breach of a lease is reviewed on appeal under the manifest error standard." *Graci v. Gasper John Palazzo, Jr., L.L.C.*, 12-853, p. 15 (La. App. 5 Cir. 5/30/13), 119 So. 3d 741, 750.

---

[8] The lessor is bound: (1) To deliver the thing to the lessee; (2) To maintain the thing in a condition suitable for the purpose of which it was leased; and (3) To protect the lessee's peaceful possession for the duration of the lease.
[9] "The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose."

In *Ganheart,* a case substantively similar to the instant matter, the plaintiff sought an increase in the damages awarded to her by the trial court for the defendant's failure to correct repeated plumbing problems causing the plaintiff to incur damages including mental anguish. *Id.* at 526-27. The leaking, which occurred over a period of only a few months, was the result of a faulty dishwasher and shower in the apartment above. *Id.* at 527. The plaintiff was forced to continuously clean-up water and the landlord never repaired the faulty appliance or shower. *Id.* at 527-28. This Court affirmed the trial court's award of $1,500 for mental distress. *Id.* at 529. This Court held "[a]s a matter of law, a tenant is not precluded from seeking nonpecuniary damages for breach of a contract of lease." *Id.* at 529. "Mental anguish may be awarded." *Id.* "A lease for residential purposes includes, as one of its objects, the enjoyment of habitable living quarters, arguably a nonpecuniary interest." *Id.* at 530. "Testimony and photographic evidence of the living conditions is sufficient evidence to warrant damages for mental anguish." *Id.*[10]

Mental anguish may also be awarded for property damage. *Jensen v. Matute*, 2019-0706, p. 12 (La. App. 4 Cir. 1/29/20), 289 So. 3d 1136, 1145.

> In Louisiana, an award for mental anguish resulting from property damage is permissible in limited situations: (1) when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result. *First of Georgia Insurance Co. v. Cohen,* 398 So.2d 1209 (La.

---

[10] "The testimony of Monica Dugais, not only corroborates the uninhabitable condition of the premises, but also shows the unpleasantness of visiting plaintiff there. We are satisfied plaintiff proved that she is entitled to damages for mental anguish and inconvenience."

> App. 4th Cir.1981); *Turgeau v. Pan American World Airways,* 764 F.2d 1084 (5th Cir.1985).
>
> … Furthermore, the mental anguish must be a real mental injury; the usual worry or inconvenience over the consequences of property damage will not justify an award for mental anguish. *Robertson v. Geophysical Service, Inc.,*469 So.2d 22 (La. App. 1st Cir.1985).

*Blache v. Jones*, 521 So. 2d 530, 531 (La. App. 4th Cir. 1988).

Like the plaintiff in *Ganheart*, the record in the present case reveals that Mr. Growe and Mr. Sede both testified to the extent of the mold damage in the apartment. Mr. Growe provided photographic evidence of the apartment's condition to support his testimony. Mr. Growe testified about his continuous anger and frustration regarding the repeated flooding that made the apartment inhabitable. Mr. Sede testified as to the bad conditions, i.e., odor and wet and moldy floors of Mr. Growe's apartment. On one occasion, Mr. Growe was forced to use his own comforter to soak up the water. The extent of the flooding was so bad that Mr. Growe was forced to recuperate in a hotel following a hospital visit. Mr. Growe's complaints were met with half-hearted insufficient stop-gaps and no true resolution to the flooding was implemented. Mr. Johnson's failure, throughout the years of Mr. Growe's tenancy to have a professional address the flooding created a continuing nuisance. Furthermore, Mr. Growe was present to witness the property damage. For nearly three and one half years, Mr. Growe experienced the flooding and attempted to clean and preserve his furniture. He witnessed his furniture buckle and warp as he waited for Mr. Johnson to solve the flooding problems. Mr. Growe suffered mental anguish beyond mere worry for the replacement of his property. Additionally, his health conditions were exacerbated to such an extent that he developed breathing problems. Mr. Growe sufficiently proved he was entitled to damages as a result of the mental anguish and the

repeated inhabitable conditions of his apartment. Thus, we find that the trial court committed manifest error in failing to award Mr. Growe general damages for mental anguish and inhabitability, in accordance with jurisprudence of this court allowing the for damages under similar circumstances.

In addition to *Ganheart's* award of one thousand five hundred dollars ($1,500), our research of similar cases granting awards for mental anguish in property damage cases reveals damage awards in the following amounts: six hundred dollars ($600),[11] five thousand dollars ($5,000),[12] twenty thousand dollars ($20,000),[13] and a range of fifteen thousand dollars ($15,000) to twenty-five thousand dollars ($25,000).[14] Based on the jurisprudence and the number of years Mr. Growe suffered, this Court finds an award of five thousand dollars ($5,000) is reasonable for mental anguish he suffered as a result of the repeated water intrusion and destruction of his personal property.[15] Thus, the trial court judgment is amended to award five thousand dollars ($5,000.00) in consideration of Mr. Growe's mental anguish.

*Fees and Damages under the Lessee's Deposit Act*

---

[11] *Smith v. Castro Bros. Corp.*, 443 So. 2d 660, 661 (La. App. 4th Ct. 1983) (finding the tenant was not entitled to damages which occurred after lawful eviction and amending the judgment award from $750 to $600 for mental anguish over a 3-month period).

[12] *In re New Orleans Train Car Leakage Fire Litig.*, 2000-1919, p. 14 (La. App. 4 Cir. 4/20/05), 903 So. 2d 9, 13 (affirming award for mental damages to tenants after a fire caused property damage, physical pain and suffering, and emotional distress).

[13] *Jones v. Capitol Enterprises, Inc.*, 2011-0956, p. 54 (La. App. 4 Cir. 5/9/12), 89 So. 3d 474, 510 (affirming a lump sum of $20,000 for physical pain and suffering, property damage, mental anguish, and nuisance where plaintiffs experienced continued nuisance from the work being performed on a local water tower).

[14] *Holzenthal v. Sewerage & Water Bd. of New Orleans*, 2006-0796, p.40 (La. App. 4 Cir. 1/10/07), 950 So. 2d 55, 79 (affirming award where plaintiffs sued for property damage resulting from sewerage and water board project that caused mental anguish and disturbance of peaceful possession of their property).

[15] Mr. Growe suffered with continuous flooding beginning in February 2014 and continued until he finally moved out in July 2017 for a total of three (3) years, five (5) months or forty-one (41) months.

Finally, Mr. Growe asserts the trial court erred in not awarding him the return of his full security deposit, as well as fees and penalties per the Lessee's Deposit Act, La. R.S. 9:3251, *et seq.* The trial court declined to award the full security deposit and penalties finding Mr. Johnson had not violated the Lessee's Deposit Act. Additionally, the trial court ruled that, pursuant to the Lessee's Deposit Act, Mr. Growe needed to submit a written demand for the return of the security deposit. Mr. Growe asserts a written demand is not required for recovery.

Louisiana Revised Statute 9:3251, *et seq.* (the "Lessee's Deposit Act") is a set of laws meant to protect lessees from the arbitrary retention of their security deposits by the lessors. *Webapps, L.L.C. v. Murdock*, 2016-0092 p. 4-5 (La. App. 4 Cir. 6/29/16), 196 So. 3d 765, 768 (citations omitted). The Lessee's Deposit Act provides the lessee a legal process to recover the security deposit, as well as attorney fees. *Webapps,* 196 So. 3d at 768; *Curtis*, 349 So. 2d at 364. The application of the Lessee's Deposit Act is a question of law subject to *de novo* review. *Webapps*, 196 So. 3d at 768.

Specifically, applicable to this case the Lessee's Deposit Act states:

> A. Any advance or deposit of money furnished by a tenant or lessee to a landlord or lessor to secure the performance of any part of a written or oral lease or rental agreement shall be returned to the tenant or lessee of residential or dwelling premises within one month after the lease shall terminate, except that the landlord or lessor may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises. **If any portion of an advance or deposit is retained by a landlord or lessor, he shall forward to the tenant or lessee, within one month after the date the tenancy terminates, an itemized statement accounting for the proceeds which are retained and giving the reasons therefor.** The tenant shall furnish the lessor a

> forwarding address at the termination of the lease, to which such statements may be sent.

La. R.S. 9:3251(A) (emphasis added).

> A. The willful failure to comply with R.S. 9:3251 shall give the tenant or lessee the right to recover any portion of the security deposit wrongfully retained and three hundred dollars or twice the amount of the portion of the security deposit wrongfully retained, whichever is greater, from the landlord or lessor, or from the lessor's successor in interest. Failure to remit within thirty days **after written demand** for a refund shall constitute willful failure.

La. R.S. 9:3252 (A) (emphasis added). Additionally, "[i]n an action brought under La. R.S. 9:3252, the court may in its discretion award costs and attorney's fees to the prevailing party." La. R.S. 9:3253.

Louisiana jurisprudence has consistently held that a lessee is not entitled to damages pursuant to willful failure to comply with La. R.S. 9:3251 if a written demand for the return of the security deposit was not issued. *Trapani v. Morgan*, 426 So. 2d 285, 291 (La. App. 4th Ct. 1983); *Maxie v. Juban Lumber Co.*, 444 So. 2d 181, 183 (La. App. 1st Ct. 1983).

In *Trapani*, the lessee-appellant contended the landlords had failed to either account for or return the security deposit. 426 So. 2d at 290. The lessee sought the return of the security deposit, damages, and attorney's fees in line with the Lessee's Deposit Act. *Id.* This Court found that even though the landlords failed to account for or return the security deposit, the lessee's failure to submit a written demand barred his recovery of damages. *Id.* at 291. This Court determined the only remedy available was the return of the security deposit and amended the trial court's ruling to reflect this. *Id.* Similarly, in Maxie, the landlord failed to return or account for the keeping of the security deposit; however, the lessee failed to

20

submit a written demand. 444 So. 2d at 183. Akin to *Trapani*, the court reasoned that the lessee must make a written demand and denied damages to the lessee. *Id*.

In the instant case, Mr. Johnson was obligated to either return Mr. Growe's deposit within thirty (30) days of the termination of the lease or provide Mr. Growe with an itemized statement within one month of the termination of the lease outlining the amount to be retained and giving the reasons for retention. Because the lease terminated on June 30, 2017, Mr. Johnson had until July 30, 2017, to act. Mr. Johnson timely provided the itemized statement to Mr. Growe on July 16, 2017. Thus, we find that Mr. Johnson complied with La. R.S. 9:3251(A).

Mr. Growe did not make a written demand for the return of his security deposit as mandated by statutory and jurisprudential authorities; thus, he is barred from recovering any damages he may have been due. The trial court made actionable the only remedy available, which was to return the portion of the security deposit that was wrongfully withheld. The trial court did not err when it denied damages pursuant to the Lessee's Deposit Act.

In addition to denying damages, the trial court also denied attorney's fees. Louisiana Revised Statute 9:3253 allows the prevailing party to recover attorney's fees at the discretion of the trial court. In this matter, the trial court, citing *Maxie* in its reasons for judgment, denied attorney's fees because Mr. Growe was not entitled to damages. The lessee in *Maxie* asserted the trial court erred in linking the award of attorney's fees with whether or not he was also entitled to damages. 444 So. 2d at 183. The appellate court affirmed the denial of attorney's fees holding that when the "[prevailing party] is not entitled to damages under La. R.S. 9:3252, La. R.S. 9:3253 is inapplicable…." *Id*.

Based on the aforementioned, we find that Mr. Growe is not entitled to damages. Following the standard set forth in *Maxie*, we agree that the lack of entitlement to damages precludes consideration of attorney's fees. Accordingly, we find the trial court did not abuse its in declining to award attorney's fees. Thus, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is amended to reflect that Mr. Growe is entitled to the partial refund of his security deposit in the amount of three hundred and twenty-eight dollars and fifty-two cents ($328.52) and general damages for mental anguish in the amount of five-thousand dollars ($5,000.00). This combined with the trial court's award of two thousand, six hundred dollars ($2,600) for property damage equals a total award of seven-thousand nine-hundred twenty-eight dollars and fifty-two cents ($7,928.52) plus judicial interest in accordance with the trial court's judgment. Thus, the judgment of the trial court is amended, and affirmed as amended.

**AMENDED & AFFIRMED AS AMENDED**