GULOTTA, Judge.
These consolidated suits arise out of a landlord-tenant dispute. The tenant filed *1241 suit for refund of a damage deposit plus damages and attorney’s fees due to the landlord’s alleged willful failure to comply with the requirements of LSA-R.S. 9:3251. Subsequently, the landlord filed a separate action for damages to the leased premises beyond normal wear and tear allegedly caused by tenant’s fault and for attorney’s fees and loss of rental income occasioned by his alleged failure to timely vacate.
Lessor appeals from the judgment awarding tenant the sum of the deposit ($275.00) less a credit in favor of lessor for the expense of changing a lock ($42.88). In answer to the appeal, lessee seeks judgment for the full amount of the deposit plus damages and attorney’s fees.
The parties entered into a written lease of residential premises for a term of one year commencing March 1,1975, and terminating on February 28, 1976, at a monthly rental of $275.00. Upon expiration of the lease, lessee, by agreement of the parties, was permitted to remain in the premises at the same rental for an additional month, i. e., until April 1,1976. Upon lessee’s failure to vacate the premises on that date, lessor brought eviction proceedings which resulted in an order made executory April 30, 1976, directing lessee to terminate his occupancy. In conformity with this order, lessee vacated the premises on April 30 and on May 3 surrendered a set of apartment keys to lessor’s rental agent.
On May 6, lessee made written demand for return of the $275.00 deposit. On May 14, lessor’s attorney, in a written response, itemized a total of $592.15 expenses claimed by lessor.[1] Lessee was informed in this letter that the $275.00 deposit was being forfeited and that a demand for an additional sum of $317.15 was being made by lessor. Lessee’s suit followed.
On appeal, lessor complains that the trial judge failed to render a judgment against lessee for the amount of damage caused by the lessee (ordinary wear and tear excepted) plus stipulated attorney’s fees and costs, as well as loss of rental caused by lessee’s untimely surrender of the premises.[2]
In seeking statutory penalties and attorney’s fees in addition to a refund of his deposit, lessee complains lessor’s letter of May 14 is an insufficient response to his refund demand. In this regard, he argues that the lessor’s letter contains no reason for the retention of the deposit as required by LSA-R.S. 9:3251 which mandates lessor to forward “an itemized statement accounting for the proceeds which are retained and giving the reasons therefor”. Lessee ar *1242 gues that the insufficiency of this response and lessor’s refusal to inspect the premises with lessee when the apartment was vacated constitute “willful failure” by lessor to comply with LSA-R.S. 9:3251, thereby entitling lessee to recover damages and attorney’s fees in accordance with the provisions of LSA-R.S. 9:3252 and 3253. .
At the outset, we find no merit to lessor’s claim for stipulated attorney’s fees and costs based on the written lease provisions. We reject lessor’s contention that a reconduction[3] of the written lease took place. It is true that upon expiration of the written lease, lessor permitted lessee to continue his occupancy of the premises for one month until April 1, 1976. However, the terms of the written lease contemplated such an extension of occupancy. The pertinent lease provision is as follows:
“ * * * Should Lessor allow or permit Lessee to remain in the leased premises after the expiration or termination of this lease, this shall not be construed as a reconduction of this lease.”
Under the circumstances, we conclude that subsequent to the expiration of the written lease, a month-to-month lease existed and no reconduction of the written lease occurred.[4]
DAMAGES TO PREMISES
The record supports the trial judge’s refusal to find lessee liable with regard to lessor’s claim for costs of cleaning the kitchen floor, stove and cabinets; of replastering and painting caused by nail holes; and of cleaning the front porch. Although a repair man employed by lessor testified concerning the poor condition of the premises, his testimony was rebutted by lessee and lessee’s friend who testified that they thoroughly cleaned the apartment, appliances and front porch. According to lessee’s friend, the premises were left cleaner than when Provosty commenced his tenancy. The trial judge simply accepted lessee’s version of the condition of the rented premises and rejected lessor’s version. Findings based on a credibility determination, absent manifest error, will not be disturbed. We find no such error.
We are in agreement also with the trial judge that lessor is not entitled to recover damages for a broken cabinet drawer, grease spots on the carpet and dents in the threshold of the apartment. Lessor simply failed to carry the burden of showing that these claims were caused by lessee’s fault.[5]
*1243 The record does not support, however, denial of lessor’s claims for the cost of repainting the rear porch due to fire damage from lessee’s barbeque grill, for the cost of replacing a broken window pane and for the cost of removing glue from a number of windows. Though the fire-damaged boards were replaced by lessee, plaintiff’s witness could not recall if the new boards had been painted. Lessor testified and documented that $18.00 was spent in repainting the rear porch. Lessee’s witness friend further testified that a window pane had broken during the summer of 1975 and that a number of panes of glass had been taped for hurricane protection. She stated that tape had been removed but that the glue remained. Lessor’s repair man testified that at least two hours of labor were involved in cleaning approximately 40 window panes that had been taped and that the broken pane had to be replaced. Accordingly, we conclude that lessor is entitled to the sum of $18.00 (cost of painting the rear porch), the sum of $3.23 (cost of the window pane) and an additional award of $16.00 (cost of labor to clean the windows).[6]
COST OF LOCK REPLACEMENT
We find no error in the trial judge’s award of $42.88 for the cost of replacing the locks and keys to the apartment. Prov-osty testified that upon renting the apartment he had received one set of two keys, that he had not had other keys made and that the two keys had been returned to lessor’s realtor on May 3, 1976. Lessor testified that he had given lessee a key to the patio gate and that the key was never returned to him. He further stated that on May 10, 1976, he heard someone walking in the apartment and on the following morning found a set of keys in his mailbox. The locks were replaced on May 13, 1976. Under these circumstances, we cannot say the trial judge erred in apparently concluding the lessor was reasonably concerned about security of the vacant premises caused by the strained relationship between the parties and the dispute over the return of the keys. We conclude the award for the lock replacement is proper.
LESSOR’S CLAIM FOR LOSS OF RENTAL
The record also supports a denial of lessor’s claim for loss of rental at the rate of $350.00 per month for April and $300.00 per month for the first 14 days of May, 1976. In connection with lessor’s claim for the April loss, we are persuaded that the trial judge apparently rejected the lessor’s agent’s testimony that a prospective tenant had been obtained. No corroborative testimony was offered to support the agent’s claim. It appears corroboration easily could have been obtained. In connection with the claimed May loss, lessee surrendered the keys to the apartment on Monday, May 3, 1976, having vacated the apartment on Friday, April 30. Plaintiff retained the keys over the weekend for the purpose of making an agreed inspection of the apartment with either lessor or his realtor. Under the circumstances, we conclude that lessee vacated the premises by April 30. Though it is true that the locks had to be changed, we fail to perceive any ground upon which lessee can be held liable for the lessor’s failure to rent the apartment until May 14. There is no evidence in the record to indicate that a tenant was willing to rent the apartment on May 1, 1976, at the rate of $300.00 per month but was unable to do so because of lessee’s fault.
*1244 LESSEE’S CLAIM FOR ATTORNEY’S FEES AND DAMAGES
Finally, we find no merit to lessee’s contention that lessor has willfully failed to comply with the requirements of LSA-R.S. 9:3251, thereby entitling lessee to statutory damages, costs and attorney’s fees. LSA-R.S. 9:3251 requires the lessor retaining a damage deposit or any portion thereof to forward to the lessee within one month of the termination of the tenancy “an itemized statement accounting for the proceeds which are retained and giving the reasons therefor”. LSA-R.S. 9:3252 provides for the award of damages in the event of lessor’s “willful failure” to comply with the requirements of LSA-R.S. 9:3251. Following lessee’s written demand for a refund of the deposit on May 7, lessor’s attorney sent lessee a letter itemizing lessor’s claims and stating that the deposit was being applied against the total. Lessee received copies of detailed invoices corresponding to each of the claims. Under these circumstances, we cannot say that the lessor has willfully failed to comply with the statutory requirement.
We likewise reject lessee’s argument that the refusal of lessor and his realtor to inspect the premises with him upon termination of his tenancy constitutes bad faith amounting to willful' failure to comply with LSA-R.S. 9:3251. The statute does not mention inspection of the premises and we know of no authority which requires a lessor to inspect the rental property with the departing lessee as a prerequisite to retaining the deposit. Though such an inspection might be conducive to an amicable settlement of the parties’ differences, and therefore advisable, we do not consider a lessor’s refusal to inspect to be bad faith entitling lessee to statutory damages.
The judgment of the trial court in favor of lessee is amended to reflect an increased total recovery to lessor in the sum of $80.11.[7] In all other respects, the judgment is affirmed. Accordingly, the recast judgment is as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, L. Maurice Provosty, and against the defendants, Harvey E. Guss and William Kornhaus, for the principal amount of $275.00 with legal interest annually on the above sum from date of judicial demand until payment; subject to a credit of $80.11; each party to bear its own costs.

AMENDED AND AFFIRMED.

. The owner’s claims were itemized as follows: cleaning and repairs, $120.40; labor and paint, $18.00; cleaning stair carpet, $10.31; cleaning entrance hall carpet, $26.50; change of locks and keys, $42.88; legal services, rule for possession of premises, trial no. 128-672, First City Court, $125.00; court costs, $16.00; loss of rental for month of April, 1976 ($350.00 less $275.00), $75.00; loss of rental from May 1, 1976 through May 14, 1976 at $300.00 per month, $158.06; total, $592.15. Lessee received copies of bills corresponding to the itemized damages and specifying them in greater detail.

. The lease provides, in pertinent part:
“[The Lessee agrees] at the termination or cancellation of this lease to return said premises broom clean and free from trash, and in like good order as received by actual delivery of the keys to Lessor or Agent, the usual decay, wear and tear excepted.
“Lessee is obligated not to drive nails into the walls or woodwork, and is to hang pictures only from picture moulding, and Lessee is responsible for any damage to walls or woodwork.
* * # * * #
“At the expiration of this lease, or its termination for other causes, Lessee is obligated to immediately surrender possession, and should Lessee fail to do so, he consents to pay any and all damages, but in no case less than five times the rent per day, with Attorney’s fees, costs, etc. * * *
******
“ * * * Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of Lessor arising from this lease, Lessee shall pay, as fees and compensation to such Agent or Attorney an additional sum of fifteen per cent of the amount of such claim, the minimum fee, however, to be $100.00, or if the claim be not for money, then such sum as will constitute a reasonable fee, altogether with all costs, charges and expenses.’’

. See LSA-C.C. art. 2689 which provides as follows:
Art. 2689. Reconduction of lease of house or room by continued possession after expiration of term
“Art. 2689. If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued, and he can not be compelled to deliver up the house or room without having received the legal notice or warning directed by article 2686.”

. In giving effect to the non-reconduction clause of the lease, we distinguish Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970). In the cited case, the lease provided:
“ * * * Should Lessor permit Lessee to remain in the leased premises after the expiration of this lease, it shall not be construed as a reconduction of this lease, but Lessee shall occupy the leased premises as a tenant by the month.”
The court concluded that the stipulation that lessee “shall occupy the leased premises as a tenant by the month” constituted reconduction. The provision in the lease in the instant case contains no such stipulation.

.LSA-C.C. art. 2721 provides:
Art. 2721. Lessee’s liability for damages through fault
“Art. 2721. Lessee is only liable for the injuries and losses sustained through his own fault.”
With regard to the cabinet drawer, lessor’s repairman testified that it could have been broken in many different ways, including the possibility that the materials were not good enough for continued use over a year and a half. He also acknowledged that the threshold could have been damaged in the last 3 or 4 years. Lessee’s friend testified that the carpet in the front hall was spotted and worn in the summer of 1975 and that lessee’s bicycle parked there did not drip oil. The carpet cleaner estimated the age of the carpets to be 7-8 years. Though the stains were in his opinion relatively fresh, he did not know who had made the stains or how much traffic was borne by the carpets.

. The cost of the pane of glass is itemized on the repairman’s bill which was forwarded to lessee by lessor’s attorney. The total labor cost listed on the bill is $95.00. The repairman testified that he spent a “good day and a half” working at the apartment subsequent to lessee’s leaving. Accordingly, we calculate that a total of 12 hours was spent on the job at the hourly rate of approximately $8.00 (12 hours at $8.00 per hour equals $96.00). We consider the sum of $16.00 (2 hours required, according to the repairman) to be adequate payment for the labor involved in replacing the pane of glass and cleaning the glue markings off the windows.

. This figure consists of the sum of $42.88 (cost of the lock and keys), $18.00 (cost of painting the rear porch), $3.23 (cost of the window pane) and $16.00 (cost of the labor for replacing the pane and cleaning the windows).