| RICKESHIA-RAQUEL DEVALL | * | NO. 2022-CA-0774 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| HOME FINDERS INTERNATIONAL, INC. AND NATALIE W. GAMBLE | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |

* * * * * * *

**CONSOLIDATED WITH:**

RICKESHIA-RAQUEL DEVALL

VERSUS

HOME FINDERS INTERNATIONAL, INC. AND NATALIE W. GAMBLE

**CONSOLIDATED WITH:**

NO. 2022-CA-0775

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2021-01910, SECTION "B"
Honorable Marissa A Hutabarat,
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rachael D. Johnson, Judge Karen K. Herman)

Vincent James Booth
BOOTH & BOOTH, A PLC
138 North Cortez Street
New Orleans, LA 70119

  COUNSEL FOR PLAINTIFF/APPELLEE

Darleen Marie Jacobs
Rene' Daniel Lovelace
Al Ambrose Sarrat
JACOBS, SARRAT, LOVELACE, HARRIS & MATTHEWS
823 St. Louis Street
New Orleans, LA 70112

  COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART; REVERSED IN PART**

May 8, 2023

*RDJ*
*DLD*
*KKH*

The instant litigation arises from a rental security deposit dispute. Home Finders International, Inc. ("Home Finders"), and Natalie Gamble ("Ms. Gamble") (collectively, "Defendants") appeal the trial court's July 8, 2022 judgment awarding Rickeshia-Raquel Devall ("Ms. Devall") $975.00 for her withheld security deposit as well as costs and reasonable attorneys' fees pursuant to the Lessee's Deposit Act, codified at La. R.S. 9:3251 *et seq*. Defendants also appeal the trial court's September 8, 2022 judgment in which the trial court granted Ms. Devall's motion to assess and attorneys' fees and costs, awarding Ms. Devall $6,495.25, and denying Defendants' motion to assess attorneys' fees and costs. Ms. Devall seeks additional attorneys' fees for the defense of Home Finders' appeal. After consideration of the record before this Court and the applicable law, we affirm in part and reverse in part.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**Factual Background**

Ms. Devall rented an apartment (the "Property") from Home Finders located at 1646 N. Claiborne Avenue in New Orleans, Louisiana, for a twelve-month term beginning on May 1, 2019. Her monthly rent was $975.00, and her security deposit was also $975.00. The lease between the parties required any changes to be made in writing and signed by the parties. It contained the following language concerning the option for a month-to-month renewal of the lease, the return of Ms. Devall's security deposit, and attorneys' fees:

> **_MONTH TO MONTH RENEWAL_** If Lessee, or Lessor, desires that this lease terminate at the expiration of its term he must give to the other party written notice at least 30 days prior to that date. Failure of either party to give this required notice automatically renews this lease and all of the terms thereof except that the lease will be on a month to month basis.
>
> \* \* \* \* \*
>
> **_SECURITY DEPOSIT_** Upon execution of this lease, Lessee agrees to deposit with Lessor, the sum of $975.00. This deposit shall be non-interest bearing and is to be held by Lessor as security for the full and faithful performance of the terms and conditions of this lease. This security deposit is not an advance rental and <u>Lessee may not deduct portion of the deposit from rent due to Lessor</u>. This security deposit is not to be considered liquidated damages. In the event of forfeiture of the security deposit due to Lessee's failure to fully and faithfully perform all of the terms and conditions of this lease, Lessor retains all of his other rights and remedies. Lessee does not have the right to cancel this lease and avoid his obligations hereunder by forfeiting said security deposit.
>
> Deductions will be made from the security deposit to reimburse Lessor for the cost of repairing any damage to

the premises or equipment or the cost of replacing any of the articles or equipment that may be damaged beyond repair, lost or missing at the termination of this lease. Deductions will also be made to cover any unpaid amounts owed to Lessor for any damage, loss, or charges occurring prior to termination of this lease and for which Lessee is responsible. In the event that damages or other charges exceed the amount of the security deposit, Lessee agrees to pay all expenses and cost to Lessor. In the event that there has been a forfeiture of the security deposit, excess charges shall be paid in addition to the amount of the said security deposit.

Should there be any damage to the leased premises or equipment therein, reasonable wear and tear excepted, caused by Lessee, his family, guests or Agents, Lessee agrees to pay Lessor when billed the full amount necessary to replace the damaged premises or equipment. This includes but is not limited to garbage disposal, plumbing problems due to improper usage, also water problems due to improper bath/shower usage.

* * * * *

The leased premises must be returned to the Lessor in as good a condition as they were at the time the Lessee first occupied same, subject only to normal wear and tear. Lessor agrees to deliver the premises clean and free of trash at the beginning of this lease and Lessee agrees to return the same in like condition at the termination of this lease. At the termination of this lease, the Lessee shall be entitled to an accounting and a return of the security deposit within 30 days thereafter, providing all of the obligations of the [L]essee have been fulfilled, including return of the keys to the Lessor. Lessee shall provide Lessor with a forwarding address, in writing.

* * * * *

**_ATTORNEYS FEES_** [sic] Lessee further agrees that if an Attorney is employed to protect the rights of the Lessor hereunder, Lessee will pay the fee of such attorney. Such a fee is hereby fixed at twenty-five (25%) percent of the amount claimed or a minimum of $300.00 whichever is greater. Lessee further agrees to pay all court costs and sheriff's charges and all other expenses involved.

3

It is undisputed that Ms. Devall was renting the property on a month-to-month basis upon the expiration of the lease's initial term. On October 5, 2020, Ms. Devall initially gave notice of her intent to vacate the Property by calling Ms. Gamble, who served as the office manager for Home Finders at the time. Ms. Gamble explained to Ms. Devall that she would need written notice but also made a notation in her file that Ms. Devall called her. The following day, Ms. Devall emailed Ms. Gamble and provided thirty days' written notice of her intent to vacate the Property and requested that Home Finders return her security deposit.

Many of the remaining facts at issue in the instant litigation are disputed, and both parties presented considerable evidence concerning these underlying facts at trial. Ms. Devall alleges that she had "removed [her] furniture and a lot of the big items" to her new apartment but that she still had personal possessions at the Property when Hurricane Zeta hit New Orleans on October 28, 2020, which caused the Property to be without electricity until November 6, 2020. Ms. Devall further alleges that she checked power outage maps as well as street lights near the Property to see whether the Property had power. According to Ms. Devall, she had an account with Entergy New Orleans ("Entergy") paid her bills via money order, online, and by going to a store across the street from the Property. Ms. Devall further alleges that she returned to the Property in the morning on November 6, 2020 to move out the rest of her possessions and that the Property's electricity meter was turned off on November 6, 2020 at her request. According to Ms. Devall, apart from "pictures of [her] chilling in [her] house with the lights on," she

does not have receipts or other evidence proving she paid her electricity bills because she does not have a current account with Entergy and because Entergy informed her prior to trial that "it would take weeks for [her] to get those receipts sent to [her]."

Ms. Devall alleges that she went to the Property in the morning on November 6, 2020 to finish moving out and that she was cleaning the apartment and gathering her possessions when two Home Finders employees arrived. Ms. Devall further alleges that she told them that she was cleaning the Property and that she called Ms. Gamble, who returned her call approximately half an hour later. According to Ms. Devall, the Home Finders employees left after seeing that she was cleaning the Property. Ms. Devall alleges that Galen Rogers ("Mr. Rogers"), her friend and co-worker, assisted her in moving out of the Property by helping her load her personal items into his truck later that afternoon. According to Ms. Devall, Mr. Rogers left for work but then returned later that evening to help her finish moving out of the Property. Ms. Devall further alleges that when they left the Property for the final time on November 6, 2020, they had cleaned the apartment and removed the last of Ms. Devall's possessions from the Property.

Defendants allege that the electricity on the Property was turned off from June 30, 2020 until November 6, 2020 due to Ms. Devall's failure to pay her Entergy bill. Defendants further allege that there was no power outage at or around the Property between October 28, 2020 and November 6, 2020 due to Hurricane Zeta. According to Defendants, Ms. Gamble, along with other Home

Finders employees, went to the Property in the morning on November 6, 2020 and took thirty-seven photographs of the Property's overall condition at the time. Defendants further allege that Ms. Devall still had personal items at the Property, "there was trash from front to back," and many surfaces such as a windowsill, cabinets, and flooring needed cleaning. According to Defendants, other aspects of the Property, such as ceramic tiles and a door, needed to be repaired. Defendants allege that Ms. Devall was not at the Property on November 6, 2020 when Ms. Gamble visited. Defendants further allege that Home Finders employees cleaned the Property and removed trash as well as Ms. Devall's remaining possessions from the Property, putting both in trash bags and placing the trash bags on the street. According to Home Finders, its employees made necessary repairs so that Home Finders could rent out the Property again.

It is undisputed that on November 24, 2020, Ms. Gamble wrote, and Home Finders sent, a letter rejecting Ms. Devall's request for the return of her security deposit. In the letter, Ms. Gamble explained that Home Finders would not return Ms. Devall's security deposit because:

> Trash and debris was left through the entire apartment;
> Dirty appliances;
> Dirty Cabinets;
> Dirty bathroom;
> Dirty walls;
> Dirty floors;
> Trash thrown outside of the apartment instead of being disposed properly[; and]
> Nails in walls

Ms. Gamble also included the following list of expenses, totaling $1,559.00, which exceeded Ms. Devall's $975.00 security deposit:

6

| | |
|---|---:|
| 10 gallons of wall paint @ $28.96 a gallon | $289.60 |
| 5 gallons of trim paint @ $26.00 a gallon | $130.00 |
| Cleaning supplies | $100.00 |
| 1 carpenter for []20 hours @ [$]20.00 per hour | $400.00 |
| 2 painters for 20 hours @ $16.00 per hour | $640.00 |
| **TOTAL** | $1,559.00 |

Accordingly, Ms. Gamble explained that there was "nothing left to refund."

**Procedural History**

On April 26, 2021, Plaintiff filed suit against Defendants, asserting a claim for her withheld security deposit pursuant to the Lessee's Deposit Act as well as a claim under the Louisiana Unfair Trade Practices Act ("LUPTA"), codified at La. R.S. 51:1401 *et seq.*

On May 13, 2021, Defendants filed an answer and reconventional demand, seeking "$584.00 in costs which is over and above [Ms. Devall's security] deposit" as well as attorneys' fees, court courts, and "$10,000[.00] in damages for the loss of [Home Finders'] reputation." On July 14, 2023, Defendants filed a first supplemental and reconventional demand, seeking an additional "$975.00 as rent due to the fact that the apartment could not be rented for a month and a half."

The following day, Ms. Devall filed a peremptory exception of no cause of action ("Defamation Exception"). In her Defamation Exception, Ms. Devall argued that "Louisiana courts have repeatedly held that defamation actions based upon statements made in a lawsuit or other judicial proceedings are barred until the first suit has terminated." Ms. Devall further argued that Defendants failed to state a claim for malicious prosecution.

Defendants filed an opposition to Ms. Devall's Defamation Exception, arguing that a representative for Home Finders should be permitted to testify concerning the alleged damage to Home Finders' Reputation. Defendants also sought sanctions, attorneys' fees, and costs, arguing that Ms. Devall's allegation that the Property was without power for several days due to Hurricane Zeta was made in bad faith.

The trial court heard Ms. Devall's Defamation Exception on November 17, 2021. In a May 5, 2022 judgment, the trial court sustained Ms. Devall's Defamation Exception and dismissed Defendants' defamation claim. The trial court also awarded costs to Ms. Devall associated with the filing of her Defamation Exception.

On March 8, 2022, Defendants filed a second supplemental and amending reconventional demand, arguing that they were "entitled to sanctions, attorneys['] fees and costs pursuant to La. C.C.P. art 863 because [Ms. Devall] based her original petition upon untruths and fabrications." Defendants alleged that Entergy "confirmed" that there were no power outages around the Property due to Hurricane Zeta and that the power was disconnected at the Property because Ms. Devall failed to pay her Entergy bill.

On March 25, 2022, Ms. Devall filed a peremptory exception of no cause of action ("Sanctions Exception") in response to Defendants' second supplemental and amending reconventional demand, arguing that "the procedure for initiating a claim for [La. C.C.P. art.] 863 sanctions is uniformly by motion, employing summary procedure, rather than a substantive claim, asserted through a petition for a damages or a reconventional demand, which is limited through ordinary procedure."

8

Defendants filed an opposition to Ms. Devall's Sanctions Exception on March 29, 2022, arguing that La. C.C.P. art. 863 "clearly gives [D]efendants the right to request sanctions in their answer."

The trial court heard Ms. Devall's Sanctions Exception on April 20, 2022. In a May 5, 2022 judgment, the trial court sustained Ms. Devall's Sanctions Exception without prejudice.

The instant litigation went to trial on May 17, 2022, and the trial court took the matter under advisement. The parties submitted post-trial memoranda instead of closing arguments. In a July 8, 2022 judgment, the trial court entered, in part, judgment in favor of Ms. Devall for the $975.00 security deposit withheld. The trial court further entered judgment, in part, in favor of Home Finders and against Ms. Devall for unpaid, prorated rent in the amount of $195.00 for the month of November 2020. Finally, the trial court dismissed all claims against Ms. Gamble.

On July 21, 2022, Ms. Devall filed a motion to assess attorneys' fees and costs pursuant to La. R.S. 9:3253 and the trial court's July 8, 2022 judgment. Ms. Devall alleged that counsel had spent 45.95 hours on the instant litigation at a rate of $350.00 per hour and sought a total of $16,082.50 for attorneys' fees and costs.

In opposition, Home Finders conceded that, with proof of payment, it would not object to court courts. Home Finders argued, however, Ms. Devall's proposed amount for reasonable attorneys' fees was excessive. Home Finders further argued that $1,950.00, or twice the amount of the $975.00 security deposit, would be a reasonable amount.

On July 25, 2022, Home Finders filed a motion to recuse the trial court judge, alleging that "the [j]udge's law clerk was making faces at [Ms. Devall, Ms. Devall's] counsel, and at all of [Ms. Devall's] witnesses; and that the [j]udge

herself was prejudiced in her evidentiary rulings at trial, and in her opinion, post-trial." The trial court judge denied the motion on July 28, 2022 because it was untimely under La. C.C.P. art. 154.

On August 10, 2022, Home Finders filed a motion to assess costs and attorneys' fees. In its motion, Home Finders contended that it was the "prevailing party" at trial "brought under La. R.S. 9:5252." Home Finders alleged it performed 60.9 hours of work in connection with the instant litigation and sought $22,837.50 in attorneys' fees, at a rate of $350.00 per hour, as well as $853.00 in costs.

In opposition, Ms. Devall contended that Home Finders was not entitled to attorneys' fees and costs because Home Finders was not the "prevailing party" in the instant litigation under La. R.S. 9:3252. Ms. Devall further contended that Home Finders' motion to assess costs and attorneys' fees was untimely.

The trial court heard the parties' motions to assess attorneys' fees and costs on August 25, 2022. In a September 8, 2022 judgment, the trial court granted Ms. Devall's motion, awarding her a total of $6,495.25 in attorneys' fees and costs. With respect to attorneys' fees, the trial court found that counsel for Ms. Devall was entitled to 49.95 hours of attorneys' fees at a rate of $125.00 per hour. The trial court denied Home Finders' motion, finding that Home Finders was not the "prevailing party" in the instant litigation under La. R.S. 9:3252.

Both parties appealed, and this Court consolidated the appeals.

## DISCUSSION

**Assignments of Error**

On appeal, Home Finders raises three assignments of error, arguing that the trial court erred when it: (1) awarded Ms. Devall $975.00 for the security deposit

withheld, along with costs and reasonable attorneys' fees; (2) "failed to enforce the clear and unambiguous language of the contract of the lease entered into by the parties and prorate[d] the rent due to [Home Finders]" for the month of November 2020; and (3) awarded Ms. Devall $6,495.25 in attorneys' fees and costs and denied Home Finders' motion to assess costs and attorneys' fees. While styled as an assignment of error, Ms. Devall "seeks an award of additional attorneys['] fees incurred in the defense of appeal brought by [Home Finders]." Where appropriate, we address assignments of error together based on the nature of the issues presented.

**Standards of Review**

"The application of the Lessee's Deposit Act is a question of law subject to *de novo* review." *Growe v. Johnson*, 20-0143, p. 19 (La. App. 4 Cir. 2/17/22), 314 So.3d 87, 101 (citing *Webapps, L.L.C. v. Murdock*, 16-0092, pp. 4-5 (La. App. 4 Cir. 6/29/16), 196 So.3d 765, 768). Concerning attorneys' fees, La. R.S. 9:3253 provides that, "[i]n an action brought under [La.] R.S. 9:3252, the court may in its discretion award costs and attorney[s'] fees to the prevailing party." Thus, the standard of review for the award of attorneys' fees under the Lessee's Deposit Act is whether the trial court abused its discretion. *See Growe*, 20-1043, p. 22, 314 So.3d at 102.

"The interpretation of the language of a contract is a question of law subject to the *de novo* standard of review on appeal, while factual determinations are subject to the manifest error standard of review." *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 17-0595, p. 7 (La. App. 4 Cir. 2/14/18), 317 So.3d 351, 357 (citing *ETI, Inc. v. Buck Steel, Inc.*, 16-0602, pp. 4-5 (La. App. 4 Cir. 2/1/17), 211 So.3d 439, 442-43). Determinations of fact as well as mixed questions of law

11

and fact are also subject to the manifest error standard of review. *Davis v. Nola Home Constr., L.L.C.*, 16-1274, p. 7 (La. App. 4 Cir. 6/14/17), 222 So.3d 833, 840; *Growe*, 20-0143, p. 7, 314 So.3d at 94.

**Ms. Devall's Security Deposit**

In Home Finders' first assignment of error, Home Finders argues that the trial court erred when it awarded Ms. Devall $975.00 for her security deposit that Home Finders withheld. In opposition, Ms. Devall contends that the trial court did not err when it awarded her the $975.00 for her security deposit. We agree with Ms. Devall.

"The purpose of the Lessee's Deposit Act was to give the tenant a remedy against the arbitrary retention of a security deposit by providing for attorney[s'] fees where the lessor wrongfully retained the deposit." *Webapps*, 16-0092, pp. 4-5, 196 So.3d at 768 (citing *Curtiz v. Katz*, 349 So.2d 362, 364 (La. App. 4th Cir. 1977)). La. R.S. 9:3251 provides in pertinent part:

> A. Any advance or deposit of money furnished by a tenant or lessee to a landlord or lessor to secure the performance of any part of a written or oral lease or rental agreement shall be returned to the tenant or lessee of a residential or dwelling premises within one month after the lease shall terminate, except that the landlord or lessor may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises. If any portion of an advance or deposit is retained by a landlord or lessor, he shall forward to the tenant or lessee, within one month after the date the tenancy terminates, an itemized statement accounting for the proceeds which are retained and giving reasons therefor. The tenant shall furnish the lessor a forwarding address at the termination of the lease, to which such statements may be sent.

Additionally, La. R.S. 9:3252 provides in pertinent part:

12

A. The willful failure to comply with [La.] R.S. 9:3251 shall give the tenant or lessee the right to recover any portion of the security deposit wrongfully retained and three hundred dollars or twice the amount of the portion of the security deposit wrongfully retained, whichever is greater, from the landlord or lessor, or from the lessor's successor in interest. Failure to remit within thirty days after written demand for a refund shall constitute willful failure.

Lastly, La. R.S. 9:3253 states that, "[i]n an action brought under [La.] R.S. 9:3252, the court may in its discretion award costs and attorney[s'] fees to the prevailing party."

As outlined above, a lessor "may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises." La. R.S. 9:3251(A). Should a lessor choose to withhold all of part of a security deposit, the lessor is required to "forward to the tenant or lessee, within one month after the date the tenancy terminates, an itemized statement accounting for the proceeds which are retained and giving reasons therefor." *Id.* Thus, the itemized statement must outline damage that is beyond reasonable wear and tear to the property.

Turning to Home Finders' November 24, 2020 letter, the itemized statement provided the following expenses for Home Finders' decision to retain Ms. Devall's security deposit: (1) trim and wall paint; (2) cleaning; (3) labor costs to paint the Property; and (4) labor costs for a carpenter to perform repairs at the Property. While the existence of "[n]ails in walls" could arguably be addressed during painting repairs, it is the sole item listed in Home Finders' November 24, 2020 letter that might require a carpenter. We pretermit any discussion of additional carpentry expenses Home Finders raised at trial that were not listed in the

13

November 24, 2020 letter, including, *inter alia*, a door that needed to be replaced and broken ceramic tiles, as this Court requires "categorical specification" concerning these expenses to "reasonably apprise[]" Ms. Devall "of the nature of the elements of wear and tear involved" in order to comply with the itemization requirements of La. R.S. 9:3251. *Woodery v. Smith*, 527 So.2d 389, 390 (La. App. 4th Cir. 1988) (quoting *Garb v. Clayton-Kent Builders, Inc.*, 307 So.2d 813, 815 (La. App. 1st Cir. 1975)). Accordingly, our inquiry focuses on painting expenses, cleaning costs, and property damage from nails in the walls.

With regards to the paint expenses, Ms. Gamble testified at trial that the paint costs Home Finders listed in the November 24, 2020 letter were obtained from receipts dated between November 10, 2020 and November 23, 2020. Mr. Rice, however, testified at trial that he had two painters start painting the Property on November 7, 2020. When asked about this discrepancy in timing, Ms. Gamble testified that "Home Finders does keep paint in [its] warehouse so if we used what we had in the warehouse and had to purchase more that is what we did." She further testified that she checked the SKU numbers of each receipt to ensure that the itemized expenses in Home Finders' November 24, 2020 letter were specifically for the Property. According to Ms. Gamble, Home Finders potentially made other purchases, as reflected in the receipts, for the Property but declined to charge Ms. Devall for them.

As to the condition of the walls and trim, Mr. Gamble testified that the walls needed to be painted because "there was writing on the walls in the bedrooms" and because "the front rooms look[ed] like there was dirt on them." According to Mr. Rice, the trim also needed to be painted because of "dust and dirt . . . on the floor." Ms. Gamble testified that on the morning of November 6, 2020, there was "red

14

liquid thrown on the wall in one of the bedrooms," which is shown on one of the photographs took that same morning. Ms. Gamble further testified that there were "holes in the walls where nails had been."

Ms. Devall testified, however, that the walls at the Property were clean and free of damage, including damage from nails in the walls. She further testified that she did not write on the walls. Ms. Devall acknowledged that there had been red candle wax on one of the walls but that it was "scraped off," and she testified that the Property was clean when she moved out of the Property on November 6, 2020.

With regards to cleaning expenses, Mr. Rice testified that he believed painters for Home Finders purchased cleaning supplies for the Property. Ms. Gamble testified that Home Finders had receipts for $100.00 worth of cleaning supplies purchased to clean the Property. As to the Property's condition, Mr. Gamble testified that it "looked like holy hell" when he visited the Property with Ms. Gamble on November 6, 2020. According to Mr. Rice, he cleaned the Property on November 6, 2020 from late morning until approximately 3:45 p.m. Mr. Rice testified that he would have seen Ms. Devall and Mr. Rogers on November 6, 2020 had they been there. He further testified that he and Home Finders co-workers put Ms. Devall's remaining items and trash into trash bags and set both outside of the Property on the street until they could get a trailer to remove them from the curb the following day.

Ms. Devall, in contrast, testified that she cleaned the apartment on November 6, 2020 with Mr. Rogers and that the photographs Ms. Gamble took are not reflective of the condition in which she left the apartment later that same day. Specifically, Ms. Devall testified that there was no trash or debris at the Property and that there were no dirty appliances, walls, cabinets, floors, or bathrooms at the

15

Property when she moved out of the Property in the evening on November 6, 2020. Additionally, Ms. Devall testified that she and Mr. Rogers placed trash outside into trash cans as well as a green basket outside.

This Court has held that costs for painting materials fall outside of the purview of acceptable reasons for maintaining a lessee's security deposit because they are considered ordinary wear and tear. *See O'Brien v. Becker*, 332 So.2d 563, 564 (La. App. 4th Cir. 1976) ("The receipts attached to defendant's letter were primarily for painting materials, which cannot reasonably be considered as 'unusual wear' after four years of occupancy.") Cleaning expenses have also been considered normal wear and tear expenses that are outside of the scope of acceptable reasons to withhold a lessee's security deposit. *See, e.g., Growe*, 20-0143, p. 8, 314 So.3d at 95 (explaining that the trial court found "that some of the reasons listed – such as the general cleaning fee – were the result of wear and tear not subject to withholding").

In the trial court's written reasons for judgment, the trial court found that the paint and cleaning expenses Home Finders listed in its November 24, 2020 letter to Ms. Devall were expenses for ordinary wear and tear to the Property. The trial court further found that Home Finders' claims concerning damage to the Property were without evidentiary support. Given the conflicting testimony at trial, we cannot find that the trial court's conclusions were manifestly erroneous. In *Provosty v. Guss*, this Court was presented with a similar factual scenario to the instant litigation and affirmed the trial court's refusal to award the lessor costs for expenses almost identical to those Home Finders listed in its November 24, 2020 letter to Ms. Devall. 350 So.2d 1239, 1242 (La. App. 4th Cir. 1977). This Court reasoned:

> The record supports the trial judge's refusal to find lessee liable with regard to lessor's claim for costs of cleaning the kitchen floor, stove and cabinets; of replastering and painting caused by nail holes; and of cleaning the front porch. Although a repair man employed by lessor testified concerning the poor condition of the premises, his testimony was rebutted by lessee and lessee's friend who testified that they thoroughly cleaned the apartment, appliances, and front porch. According to lessee's friend, the premises were left cleaner than when [the lessee] commenced his tenancy. The trial judge simply accepted lessee's version of the condition of the rented premises and rejected lessor's version. Findings based on a credibility determination, absent manifest error, will not be disturbed. We find no such error.

*Id.* Here, the trial court heard testimony from Ms. Devall and Mr. Rogers, that the Property, including its walls, was clean and free of damage when they left on November 6, 2020. The trial court also heard testimony from multiple Home Finders employees that the Property was not clean and damaged in places. Accordingly, we find no manifest error in the trial court's decision to accept the testimony of Ms. Devall and Mr. Rogers to conclude that Home Finders was not entitled to retain Ms. Devall's security deposit based on the reasons Home Finders provided in its November 24, 2020 letter to Ms. Devall.

**Attorneys' Fees**

Home Finders contends that the trial court erred when it awarded Ms. Devall reasonable attorneys' fees and costs. Home Finders further contends that the trial court erred when it denied Home Finders' request for attorneys' fees and costs.

Ms. Devall argues that the trial court did not err when it awarded Ms. Devall reasonable attorneys' fees and costs and denied Home Finders' motion to assess attorneys' fees and costs because Ms. Devall, and not Home Finders, was the "prevailing party" in the instant litigation under La. R.S. 9:3252. Ms. Devall also seeks additional attorneys' fees and costs for the defense of Home Finders' appeal.

17

We conclude that the trial court erred when it awarded Ms. Devall attorneys' fees absent a finding that Home Finders willfully failed to comply with La. R.S. 9:3251. In the trial court's reasons for judgment, the trial court expressly found that Home Finders did not willfully fail to comply with La. R.S. 9:3251 because "Home Finders did provide an itemized letter within thirty (30) days of Ms. Devall vacating the premises." As outlined above, the plain language of the Lessee's Deposit Act provides the trial court with the "discretion [to] award costs and attorneys' the prevailing party." La. R.S. 9:3253. The "prevailing party" must be for "an action brought under [La.] R.S. 9:3252," which governs a party's willful failure to return a security deposit. *Id.*

In *Provosty*, this Court declined to find that the lessor, even though the lessor's itemized letter included costs that the trial court declined to award, willfully failed to comply with the Lessee's Deposit Act. 350 So.2d at 1244. Accordingly, the *Provosty* Court concluded that the lessee's argument that the lessee was entitled to attorneys' fees and costs was without merit. *Id.* In light of the plain language of the Lessee's Deposit Act and the factual similarities between those at issue in *Provosty* and the instant action, we agree with the trial court that Home Finders did not willfully fail to comply with La. R.S. 9:3251 and conclude that the trial court erred when it awarded Ms. Devall costs and attorneys' fees absent such a finding.

We pretermit discussion of Home Finders' argument on appeal that the trial court erred when it failed to award costs and attorneys' fees to Home Finders based on the lease provision allocating attorneys' fees to Ms. Devall for failure to comply with Rule 1-3, Uniform Rules, Courts of Appeal.

**Proration of Rent for November 2020**

Home Finders contends that the trial court erred "when it failed to enforce the clear and unambiguous language of the contract of the lease" between the parties when the trial court prorated the rent due to Home Finders for November 2020. Home Finders further argues that "[t]here is no language in the lease that provides for a proration of rent, and [Home Finders] clearly did not agree to such a proration," as all "changes must be agreed upon in writing" and signed by the parties in accordance with the terms of the lease.

Ms. Devall did not appeal the trial court's proration of rent but argues "that the award was improper, first because the lease was not reconducted and second because [Home Finders] failed to demonstrate that it sought to mitigate its damages." We agree with Home Finders that the trial court erred when it prorated the rent due to Home Finders for November 2020.

"Contracts have the effect of law and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La. Civ. Code art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

As outlined above, the initial 12-month term for the lease between the parties ran from May 1, 2019 until the last calendar day of April 2020. The lease further provided that, absent a thirty-day written notice prior to the expiration of

the lease's initial term, it would automatically renew on a month-to-month basis. Accordingly, the lease was continuing on a month-to-month basis when Ms. Devall gave written notice of her intent to vacate on October 6, 2020, which was untimely to terminate the least on October 31, 2020 but sufficient notice to terminate the lease on November 30, 2020.

"A court is not authorized to alter to make new contracts for the parties. A court's role is only to interpret the contract." *Clovelly Oil Co. v. Midstates Petroleum Co.*, 12-2055, p. 12 (La. 3/19/13), 112 So.3d 187, 196. As there was no provision allowing for proration of rent in the lease between the parties, nor was there any mutually-agreed upon changes in writing signed by the parties concerning the proration of rent, we find that the trial court erred when it found Ms. Devall liable for only a portion, rather than the entirety, of rent due to Home Finders for November 2020. Accordingly, we award Home Finders $975.00 for the month of November 2020.

## DECREE

For the foregoing reasons, we affirm the trial court's July 8, 2022 judgment awarding Ms. Devall $975.00 for her withheld security deposit and dismissing all claims against Ms. Gamble. We reverse the trial court's July 8, 2020 judgment awarding Ms. Devall costs and attorneys' fees. Further we reverse the trial court's July 8, 2022 judgment awarding Home Finders $195.00 in prorated rent for November 2020 and award Home Finders $975.00 in rent for November 2020. We affirm the trial court's September 8, 2022 denying Home Finders' motion to assess attorneys' fees and costs. We reverse the trial court's September 8, 2022 judgment granting Ms. Devall's motion to assess attorneys' fees and costs.

**AFFIRMED IN PART; REVERSED IN PART**

20